COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Humphreys and Alston
Argued at Richmond, Virginia


TROY DOUGLAS BAYLOR
                                                                    OPINION BY
v.       Record No. 2074-08-2                        JUDGE ROBERT J. HUMPHREYS
                                                                   OCTOBER 13, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

(David R. Lett, on brief), for appellant.  Appellant submitting on
brief.

Erin M. Kulpa, Assistant Attorney General (William C. Mims,
Attorney General; Jennifer C. Williamson, Assistant Attorney
General, on brief), for appellee.


Troy Douglas Baylor ("Baylor") appeals his five convictions for grand larceny, in

violation of Code § 18.2-95.  On appeal, Baylor contends that the Commonwealth failed to put

forth sufficient evidence to prove beyond a reasonable doubt that the value of the stolen items

exceeded the statutory threshold for grand larceny.  For the following reasons, we agree with

Baylor and reverse his convictions.

I.  Background

"Where the issue is whether the evidence is sufficient, we view the evidence in the light

most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom."  Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995).

So viewed, the evidence proved that on April 10, 2008, at approximately 2:00 a.m., Officer B.D.

Stitt ("Stitt") of the Henrico County Police Department executed a traffic stop on a vehicle

driven by Baylor.[1]  At the time, Baylor and Rueben Ortiz ("Ortiz") were driving south on Brook Road.  As he approached the vehicle, Stitt observed an open bag containing several catalytic converters and a motorized saw on the floor behind the driver's seat.  Stitt testified that, prior to his shift that evening, he was briefed on a number of catalytic converter larcenies from car lots and tow truck companies "along Brook Road."  Stitt then called for backup.

Officer Joseph D. Butcher ("Butcher") responded to Stitt's call for backup.  When he arrived at the scene, Butcher asked Baylor who owned the bag containing the catalytic converters.  Baylor stated that the bag belonged to Ortiz.  Butcher asked Ortiz if he had used the saw recently, to which Ortiz responded, "No."  Butcher then asked Ortiz if he could feel the saw "to see if it was warm."  Ortiz agreed.  Butcher then opened the rear driver's side door and felt both the saw's blade and motor housing.  Butcher testified that while the blade of the saw was not warm, the motor housing of the saw "was [as] hot as if it had just been used."

Investigator D.M. Monticelli ("Monticelli") also responded to Stitt's call for backup.  Monticelli questioned both Baylor and Ortiz about the catalytic converters and tools found in the vehicle.  Thereafter, Monticelli placed both Baylor and Ortiz under arrest.  The following day, Monticelli visited two car lots on Brook Road to determine if any of their vehicles were missing catalytic converters.  Monticelli learned that Community Auto Sales was missing converters from two vehicles and Fletcher's Body Shop was missing converters from three vehicles.  Monticelli then obtained a search warrant for Baylor's vehicle.  In the vehicle, Monticelli found six catalytic converters and a motorized saw.  Monticelli testified that he was able to match each

---

[1] Stitt observed Baylor driving without headlights at 1:59 a.m.  Stitt issued Baylor a summons for this traffic offense.

catalytic converter to the vehicle from which it was stolen.[2]  At trial, Baylor stipulated that the catalytic converters recovered from his vehicle matched those stolen from the car lots.

Darryl Lawson ("Lawson") was the owner of Community Auto Sales.  Lawson testified that on April 10, 2008, he received a call from a Henrico County police officer about a possible theft of catalytic converters from vehicles on his car lot.  Lawson testified that after checking his vehicles, he discovered that catalytic converters were missing from a 2005 Toyota Tundra and a 2004 Toyota Tacoma.  Lawson further testified that each vehicle had its catalytic converter prior to April 10, 2008.  In addition, Lawson testified that the cost to *replace* the converters in each vehicle was $2,200 for the Toyota Tundra and "somewhere around $700 to $800" for the Toyota Tacoma.  However, Lawson did not testify as to the original cost of the converters or their fair market value at the time of the larceny.

Matt Fletcher ("Fletcher") was the owner of Fletcher's Body Shop.  Fletcher testified that on the night in question, catalytic converters were taken from a Nissan pickup, a Mazda Protégé, and a Jeep Cherokee; however, he did not provide the model year for the vehicles.  Fletcher testified that the *replacement cost* for each converter would "start at about $400 just for the part." Like Lawson, Fletcher did not testify as to the original cost of the catalytic converters or their fair market value at the time of the larceny.  Both Fletcher and Lawson testified that used catalytic converters cannot be purchased in Virginia.[3]

At trial, Baylor made a motion to strike the charges against him, arguing that the evidence was insufficient to prove the value of the stolen catalytic converters exceeded $200.

---

[2] One vehicle required two catalytic converters.

[3] This is the stipulation of the parties, and we consider it as a fact in resolving this issue. However, we note that the context for this stipulation was apparently Code § 59.1-136.1 *et seq.* which does not actually prohibit the sale of used catalytic converters but rather restricts their sale to scrap metal dealers and places identification requirements on such sales.

The trial court denied Baylor's motion and found him guilty of five counts of grand larceny. Baylor now appeals to this Court.

## II. Analysis

When considering a challenge that the evidence presented at trial is insufficient, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002). We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

Code § 18.2-95 defines the offense of grand larceny. It provides, in pertinent part, that "[a]ny person who . . . (ii) commits simple larceny not from the person of another of goods and chattels of the value of $200 or more . . . shall be guilty of grand larceny . . . ." Code § 18.2-95. Baylor does not dispute the fact that the evidence was sufficient to prove that he stole the catalytic converters. Rather, he argues that the evidence was insufficient to prove, beyond a reasonable doubt, that the value of each of the catalytic converters exceeded $200, the statutory threshold for grand larceny. Specifically, Baylor argues that the testimony at trial was limited to the cost of replacing the catalytic converters with "new parts." Because none of the stolen converters were new, Baylor contends that this testimony "fails to state the value of the catalytic converters when removed from their respective vehicles." We agree.

- 4 -

"The value of the goods specified in [Code § 18.2-95] is an essential element of the crime, and the Commonwealth must prove that element beyond a reasonable doubt." Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994). Further, "[t]he value of stolen property is measured at the time of the theft . . . ." Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483-84 (1997). The Commonwealth can establish value in a number of ways, including the testimony of a lay person as to the property's fair market value, the opinion of an expert, "or by traditional accounting principles, *starting with the original cost* of the item and then factoring in depreciation or appreciation." DiMaio v. Commonwealth, 46 Va. App. 755, 764, 621 S.E.2d 696, 701 (2005) (emphasis added) (citations omitted). However, "*where an item has no market value*, *the actual value must be shown*." Id. (citing Lund v. Commonwealth, 217 Va. 688, 232 S.E.2d 745 (1977)) (emphasis added).

Both parties stipulate that catalytic converters may not be resold as auto parts in the Commonwealth.[4] Consequently, used catalytic converters have no legal market value beyond the scrap or recycling value of their component parts. See Berryman v. Moore, 619 F. Supp. 853, 856 (1985) (noting that where an item is "unique or unsaleable," a market does not exist). Thus, assuming without deciding that the Commonwealth established that there was no "market" for used catalytic converters, it was required to demonstrate, beyond a reasonable doubt, that the "actual value" of the converters at the time of the theft exceeded the statutory threshold. Lund, 217 Va. at 692, 232 S.E.2d at 748. We hold that the Commonwealth did not meet this requirement.

In this case, the Commonwealth established that the resale of used catalytic converters as commercial auto parts is prohibited, however it did not offer any evidence, by expert testimony

---

[4] We take this stipulation to mean that catalytic converters may not be resold *commercially* as auto parts in the Commonwealth of Virginia.

or otherwise, demonstrating the value of the items at the time of their theft.[5] Instead, the Commonwealth merely presented testimony from Fletcher and Lawson, the owners of the stolen items, pertaining to the cost of *replacing* each catalytic converter. Lawson testified that the cost, including labor, of *replacing* the catalytic converter was "somewhere around $700 to $800" for the Toyota Tacoma and $2,200 for the Toyota Tundra. Fletcher testified that the cost of *replacing* the catalytic converters on his vehicles "start[ed] around $400 just for the part." However, neither Lawson nor Fletcher testified as to the actual value of the catalytic converters at the time of the theft. Nor did the Commonwealth offer evidence concerning the original cost of the converters at the time of their installation. Though Lawson testified that the converters would "outlast the car," this evidence of reliability does not suffice to establish whether the *value* of the converters was subject to any degree of depreciation. In short, no evidence other than the current replacement value was offered which might have allowed the fact finder to infer the actual value of the items at the time of their theft.

The Attorney General acknowledges that there is no authority in the Commonwealth for the proposition that replacement value is sufficient to establish actual value and cites authority from several of our sister states which holds that evidence of replacement value may be sufficient evidence of fair market value where it is established that a stolen item has no practical market value.[6] We have reviewed the cases cited by the Attorney General; however, given the holding of our Supreme Court in Lund, we find them unpersuasive, as applied to the facts of this case. The record reflects that used catalytic converters may not be resold as replacement auto

---

[5] For example, the record is devoid of evidence that such catalytic converters have any appreciable value as scrap based upon the worth of their elemental components or whether they have any value on a "black" or illegal market.

[6] In support of this proposition, the Commonwealth cites State v. Helms, 418 S.E.2d 832 (N.C. Ct. App. 1992); State v. Randle, 410 P.2d 687 (Ariz. Ct. App. 1966); and Beasley v. Commonwealth, 339 S.W.2d 179 (Ky. 1960).

parts.  However, that is not the same as establishing that they have no actual value based upon the value of their components as scrap or as recycled materials.  Furthermore, the record does not contain any evidence demonstrating a nexus or linkage between the value of the stolen catalytic converters with the cost of a replacement unit.

To be clear, we expressly do *not* hold that evidence of an item's replacement cost may never be used to assist in establishing a stolen item's value.  It is axiomatic that some items appreciate in value with the passage of time just as other items depreciate.  Moreover, it is certainly conceivable that stolen property may be of such character or recent manufacture that replacement value accurately reflects actual or fair market value.  We simply hold that where, as here, there is an absence of evidence linking replacement value to an accurate determination of actual or fair market value, mere evidence of replacement value alone is insufficient as a matter of law to support an inference by the fact finder that the value of stolen property necessarily exceeds the statutory threshold.

Simply put, while the fact finder is entitled "to draw reasonable inferences from basic facts to ultimate facts," the record in this case does not contain sufficient facts to support the trial court's inference that the value of each stolen catalytic converter at the time of the offense exceeded the $200 statutory threshold for grand larceny.  Jackson, 443 U.S. at 319.  Therefore, we reverse Baylor's convictions, vacate the judgments of conviction for five counts of grand larceny, and remand the case to the circuit court for a new trial on charges of petit larceny if the Commonwealth be so advised.  Britt v. Commonwealth, 276 Va. 569, 576, 667 S.E.2d 763, 766-67 (2008).

Reversed and remanded.