COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Willis
Argued at Richmond, Virginia


DAVID DENONCOURT

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1515-09-2                JUDGE JERE M.H. WILLIS, JR.
                                                  AUGUST 10, 2010
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                      Thomas N. Nance, Judge Designate

          Charles E. Haden for appellant.

          Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


       On appeal from his conviction of grand larceny in violation of Code § 18.2-95, David

Denoncourt contends the trial court erred (1) in finding the evidence sufficient to prove that the

value of the items taken by him equaled $200 or more, and (2) in receiving into evidence hearsay

testimony as to the cost of repairing the damage done by the theft.  We affirm the judgment of the

trial court.

                                      Background

       "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On May 3, 2008, Della Mancheck saw Denoncourt, accompanied by several other men, stripping the aluminum siding off a rental mobile home owned by William Jefferson. Mancheck watched as Denoncourt and his companions cut the siding, folded it, and placed it in the trunk of a car. She reported this to the police, who later visited Denoncourt's home to discuss the incident with him. Denoncourt fled. Later, Denoncourt told police three men had stolen aluminum and copper wire from the mobile home and had stored it in his shed. He said Effie Parker had made two trips in her car, taking the stolen metal to Middlesex Metals to sell. He accompanied her because "no one else had an ID." Denoncourt said he signed the receipts for the sale of the metals and received "approximately $200.00."

At trial, a receipt from Middlesex Metals was produced, reflecting that Denoncourt had received $101.09 for aluminum and copper on May 3, 2008. Judith Aldridge, owner of Middlesex Metals, testified she had paid Denoncourt "market price" for the metal.

Upon learning that his mobile home had been vandalized, Jefferson inspected the damage and discovered the trailer had been stripped down to "two-by-fours and insulation." The fixtures, electrical wiring, plumbing, and aluminum siding had been removed. Jefferson said the mobile home had been "habitable" prior to the damage.

Over defense counsel's hearsay objection,[1] Jefferson testified he had obtained from contractors two estimates to repair the damage to the mobile home, one for $10,800, and the other for $9,800. Both contractors recommended that Jefferson replace the trailer rather than repair it.

Jefferson testified that approximately seven rolls of copper wiring had been stolen from the trailer, each roll worth over $600. Asked, "[W]hat would you place as the value of [the

---

[1] Defense counsel also objected to Jefferson's testimony regarding the estimates on relevance grounds, but did not obtain a ruling from the trial court on this objection.

bathroom and kitchen] fixtures at the time they were taken," he replied, "a couple grand . . . plus they tore the bathtub." Asked, "[W]hether or not in the condition they were in that they were worth more than $200," he replied, "[D]efinitely worth more than $200." Jefferson did not place a specific value on the stolen aluminum siding, but stated it was "over $200.00." On cross-examination, Jefferson acknowledged that "the figures [he'd] been giving [were] what the value to replace those fixtures were."

Analysis

Hearsay

We first address Denoncourt's hearsay argument. "Decisions on the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." Mitchell v. Commonwealth, 25 Va. App. 81, 84, 486 S.E.2d 551, 552 (1997).

It is well accepted that an owner may testify regarding the value of his property. Haynes v. Glenn, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956). His opinion testimony "is competent and admissible on the question of the value of such property, regardless of his knowledge of property values." Id.

> "It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. *The weight of such testimony is, of course, affected by his knowledge of the value.*"

Id. at 750-51, 91 S.E.2d at 436 (quoting 20 Am. Jur. Evidence § 892, p. 751) (other citations omitted) (emphasis added). Likewise, while "[i]t is permissible for an expert to give reasons for his opinion . . . if he testifies to information received from other sources, such information may be considered only for the purpose of determining what weight should be given the expert's conclusion." Foley v. Harris, 223 Va. 20, 29, 286 S.E.2d 186, 191 (1982).

- 3 -

Jefferson was asked whether he had obtained an estimate to replace the stolen items. He answered, "Yes, sir, I got two." He explained he had obtained two estimates to repair the trailer and that the estimates included the cost to replace the fixtures. Over defense counsel's hearsay objection, the trial court inquired as to the amount of the repair estimates.

The weight to be given Jefferson's value testimony was for the trial court, as trier of fact, to determine. See Haynes, 197 Va. at 750-51, 91 S.E.2d at 436. The trial court was entitled to explore Jefferson's knowledge of the value of the stolen items and to assess how much weight to attach to his opinion. In making that assessment, it properly considered the basis for his opinions.[2]

Accordingly, the trial court did not abuse its discretion in allowing Jefferson to testify regarding the repair estimates.

Proof of Value

We now consider whether the trial court erred in finding the evidence sufficient to prove that the value of the stolen items was $200 or more. "The monetary amount specified in Code § 18.2-95 is an essential element of the crime of grand larceny, and the Commonwealth bears the burden of proving this element beyond a reasonable doubt." Britt v. Commonwealth, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008). "'Proof that an article has some value is sufficient to warrant a conviction of petit larceny, but where the value of the thing stolen determines the grade of the offense, the value must be alleged and the Commonwealth must prove the value to be the statutory amount.'" Walls v. Commonwealth, 248 Va. 480, 481, 450 S.E.2d 363, 364 (1994) (quoting Wright v. Commonwealth, 196 Va. 132, 139, 82 S.E.2d 603, 607 (1954)). The relevant

---

[2] The trial court also inquired of Jefferson whether he knew the cost to replace the trailer, which had been stripped down to its framing. Jefferson could not answer the trial court's question other than to state that the contractors who had prepared the repair estimates had recommended replacing, rather than repairing, the trailer.

value is the "current value" of the stolen items, <u>Dunn v. Commonwealth</u>, 222 Va. 704, 705, 284 S.E.2d 792, 792 (1981) (*per curiam*), "measured as of the time of the theft," <u>Parker v. Commonwealth</u>, 254 Va. 118, 121, 489 S.E.2d 482, 483 (1997).

> The Commonwealth can establish value in a number of ways, including the testimony of a lay person as to the property's fair market value, the opinion of an expert, "or by traditional accounting principles, starting with the original cost of the item and then factoring in depreciation or appreciation."

<u>Baylor v. Commonwealth</u>, 55 Va. App. 82, 87-88, 683 S.E.2d 843, 845 (2009) (quoting <u>DiMaio v. Commonwealth</u>, 46 Va. App. 755, 764, 621 S.E.2d 696, 701 (2005)) (emphasis omitted).

Standing alone, evidence of a stolen item's replacement value is insufficient to establish its value at the time of the theft. <u>Id.</u> at 90, 683 S.E.2d at 846-47. While replacement value is probative of an item's fair market value, additional evidence is required to "link" the replacement value to the item's value at the time of the taking. Thus, in <u>Baylor</u> evidence of replacement cost was held insufficient to prove the value of stolen catalytic converters, even though that cost exceeded $200.

> The record reflects that used catalytic converters may not be resold as replacement auto parts. However, that is not the same as establishing that they have no actual value based upon the value of their components as scrap or as recycled materials. Furthermore, the record does not contain any evidence demonstrating a nexus or linkage between the value of the stolen catalytic converters with the cost of a replacement unit.
>
> To be clear, we expressly do not hold that evidence of an item's replacement cost may never be used to assist in establishing a stolen item's value. It is axiomatic that some items appreciate in value with the passage of time just as other items depreciate. Moreover, it is certainly conceivable that stolen property may be of such character or recent manufacture that replacement value accurately reflects actual or fair market value. *We simply hold that where, as here, there is an absence of evidence linking replacement value to an accurate determination of actual or fair market value, mere evidence of replacement value alone is insufficient as a matter of law to support an inference by the fact*

> *finder that the value of stolen property necessarily exceeds the*
> *statutory threshold.*

Id. at 89-90, 683 S.E.2d at 846-47 (citations and footnote omitted) (emphasis added).

Denoncourt argues that by acknowledging that "the figures [he'd] been giving [were] what the value to replace those fixtures were," Jefferson conceded that his appraisal was not his opinion of value, but simply a recital of replacement cost, an inappropriate standard of proof. The record does not require this reading. The "figures" given by Jefferson were the specific replacement costs obtained by him. His estimates of value employed this predicate information, but were plainly stated to be his appraisal of the value of the stolen items "at the time they were taken."

The evidence in this case included the receipt reflecting payment of $101.09 to Denoncourt and his statement to police that he received "approximately $200.00" for the scrap metal. In addition, Jefferson testified that he valued the fixtures "at the time that they were taken" at $2,000, "definitely . . . more than $200." His appraisal was based on the information that he had gathered, but was stated as his opinion. In the context of this case, that evidence supports the trial court's finding that the stolen items were worth $200 or more.

Accordingly, we affirm the judgment of the trial court.

Affirmed.