COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Kelsey and Petty
Argued at Richmond, Virginia

UNPUBLISHED

EARL DON MANNING, JR.

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1231-13-2            CHIEF JUDGE WALTER S. FELTON, JR.
                                          APRIL 8, 2014

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF COLONIAL HEIGHTS
Herbert C. Gill, Jr., Judge

Stephen K. Armstrong (Reed|Armstrong LLP, on briefs), for
appellant.

Susan Mozley Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Earl Don Manning, Jr. ("appellant") appeals his conviction of abduction with intent to

defile, in violation of Code § 18.2-48, following a bench trial in the Circuit Court of the City of

Colonial Heights ("trial court").  He asserts the evidence was insufficient to prove beyond a

reasonable doubt that he abducted K.F., a seven-year-old child.  He further contends the evidence

was insufficient to prove beyond a reasonable doubt that he abducted K.F. with the intent to

sexually molest her.

                                    I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence presented at trial proved that on

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

March 28, 2012, at about 7:30 p.m., Stephanie Stole was inside a house on Bermuda Avenue when she heard her seven-year-old niece, K.F., screaming from the front yard. In response, Stole rushed into the yard. She saw appellant straddling a bicycle as he pulled K.F. toward him, holding onto her wrist. Stole heard appellant say to K.F., "Let's go. Let's go for a ride." Stole said appellant did not release K.F. until Stole intentionally fell on his arm with her upper body, forcing him to let go of K.F.'s wrist. Stole then screamed for her sister, Sheila Sochol, because she thought she should have "back-up."

Sheila Sochol testified that K.F., who was her daughter, and K.F.'s five-year-old playmate, C.S., were playing in the front yard when she heard both K.F. and Stole yelling for help. Sochol hurried outside and saw that appellant was "acting crazy" and was "just acting weird." When appellant finally released K.F., Sochol saw a mark on K.F.'s arm. Sochol and Stole told appellant to leave the Bermuda Avenue yard and he "finally went on."

Colonial Heights Patrol Officer Simmons was dispatched to the house on Bermuda Avenue after Stole telephoned police for help. Officer Simmons encountered appellant on his bicycle a few minutes later, not far from Bermuda Avenue. Officer Simmons pulled over and asked appellant to stop. When appellant continued riding his bicycle, Officer Simmons "removed" him from his bicycle. Officer Simmons detected a "strong odor of alcohol on [appellant's] breath," and placed appellant in custody for being "drunk in public." Appellant admitted to Officer Simmons that he had been drinking.

After Officer Simmons was dispatched to Bermuda Avenue, Detective Kelley was also dispatched to the same location. At trial, Detective Kelley testified that K.F. was "upset" when he talked to her that evening and that he noticed an appearance of "redness of the skin" on her right wrist.

Detective Kelley interviewed appellant at the police station. Appellant told Detective Kelley that he "didn't know what was going on, that he was riding down the street, [and that he] had stopped by his friend Bubba and Stacy's house to see them." He further told Detective Kelley that Bubba and Stacy were not at home and "then he was riding down the street and some people started yelling and screaming at him." At that point, appellant said "[h]e went around the corner, where he was knocked to the ground and taken into custody." Appellant told Detective Kelley he did not go into the yard at all and "didn't see anybody at the residence in the yard."

K.F. testified that she did not know appellant and that he was a stranger to her. She said he pulled her by the arm and said, "Come on, get on my bike. I'm not coming back." K.F. said appellant would not let her go and that she escaped by "jerk[ing] my arm and [running]." K.F. said her aunt had also helped to "pull[] [her] away."

Appellant testified on his behalf. He denied grabbing K.F. He stated that he did not know K.F. and had "never seen [her] before in my life." Appellant told the trial court that he knew K.F.'s five-year-old playmate, C.S., and that C.S. had asked him to "push her on the bicycle." Appellant testified that Stacy Sochol was Bubba's wife and that it was Stacy and Bubba's house he had intended to visit that evening.[1]

Testifying in rebuttal, Detective Kelley told the trial court that appellant never mentioned that C.S. had asked him for a ride on his bicycle. Moreover, Detective Kelley testified that appellant told him no one was in the front yard when he passed by that area, but later said the only conversation he had with the two girls concerned whether "Bubba and Stacy" were home.

Finally, Stacy Sochol testified on appellant's behalf. She testified that her husband's name was Bubba, that their house was two doors down from Sheila Sochol's house, and that C.S. was her five-year-old daughter. Stacy Sochol said she had known appellant since junior high

---

[1] On cross-examination, appellant admitted he had a felony conviction.

school and that they were friends. Sochol said that she was not related to Sheila Sochol and that Sheila Sochol was Bubba's ex-wife.

The trial court found appellant guilty of abduction of K.F. with intent to defile, in violation of Code § 18.2-48. The trial court sentenced appellant to twenty-five years of incarceration with the Department of Corrections, with twelve of those years suspended for a period of twenty years.

## II. ANALYSIS

Appellant contends the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he abducted K.F. and that the evidence was insufficient to prove beyond a reasonable doubt that he abducted K.F. with the intent to defile her.

"When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it." Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008). In considering appellant's sufficiency claim, "'we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Baylor v. Commonwealth, 55 Va. App. 82, 84, 683 S.E.2d 843, 844 (2009) (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 135, 455 S.E.2d 730, 731 (1995)). If there is evidence to sustain the trial court's verdict, this Court may not overrule it and substitute its own judgment, even if it differs from that of the trial court. George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991). "Practically speaking, this means [the trial court's] decision cannot be disturbed on appeal unless *no* 'rational trier of fact' could have come to the conclusion it did." Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 13 (2004) (emphasis added) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)).

## A. Abduction

To sustain appellant's underlying conviction of abduction, the Commonwealth was required to prove beyond a reasonable doubt that appellant "by force, intimidation or deception, and without legal justification or excuse," seized, took, transported, detained, or secreted K.F. with intent to deprive her of her personal liberty or to withhold or conceal her "from any person, authority or institution lawfully entitled to [her] charge." Code § 18.2-47.

Here, the evidence presented showed that appellant, who was noticeably intoxicated, grabbed the wrist of K.F., a seven year old whom he did not know, pulled her toward his bicycle, told her they were going to take a ride, and informed her that he was "not coming back." He refused to release K.F.'s wrist until her aunt physically pushed him away. When questioned by Detective Kelley, appellant initially stated that no one was in the front yard when he passed by, but later stated he spoke to K.F. and C.S. regarding whether Bubba and Stacy were home. At trial, appellant admitted to speaking with C.S., but denied having any contact with K.F. However, "[i]n its role of judging witness credibility," the trial court as fact finder "[was] entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused [was] lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

The evidence at trial, including the testimony of the child victim and her adult relatives, was sufficient to prove that appellant, by force, seized K.F. with the intent to deprive her of her personal liberty. Accordingly, we conclude the trial court did not err by finding that the evidence was sufficient to prove beyond a reasonable doubt that appellant committed the underlying offense of abduction of K.F.

## B. Intent to Defile

> [I]n order for the Commonwealth to prove that the abduction was with the intent to defile, it had to prove that the appellant abducted the child with the specific intent to sexually molest her. Simms v. Commonwealth, 2 Va. App. 614, 617, 346 S.E.2d 734, 735 (1986).

"Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case." David v. Commonwealth, 2 Va. App. 1, 3, 340 S.E.2d 576, 577 (1986) (quoting Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979)). The state of mind of an accused may be shown by his conduct and by his statements. Long v. Commonwealth, 8 Va. App. 194, 198, 379 S.E.2d 473, 476 (1989). However, where an offense consists of an act combined with a particular intent, the intent must be established as a matter of fact, and "surmise and speculation as to the existence of the intent are not sufficient." Dixon v. Commonwealth, 197 Va. 380, 382, 89 S.E.2d 344, 345 (1955).

"The question of [appellant's] intent must be determined from the outward manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [fact finder]." Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 849 (1951). "[T]he [fact finder] may consider the conduct of the person involved and all the circumstances revealed by the evidence." Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987). Indeed, "the specific intent in the person's mind may, and often must, be inferred from that person's conduct and statements." Martin v. Commonwealth, 13 Va. App. 524, 527, 414 S.E.2d 401, 402 (1992) (citing Hargrave v. Commonwealth, 214 Va. 436, 437, 201 S.E.2d 597, 598 (1974)).

Hughes v. Commonwealth, 18 Va. App. 510, 519-20, 446 S.E.2d 451, 457 (1994) (*en banc*).

In Wagstaff v. Commonwealth, No. 1040-95-2 (Va. Ct. App. July 2, 1996), this Court found that evidence that the defendant's pants were unzipped and his hand was on his groin supported an inference that he intended to sexually molest the victim, and was sufficient to sustain his conviction of attempted abduction with intent to defile.[2] Similarly, in Ellis v. Commonwealth, No. 2700-10-2 (Va. Ct. App. Mar. 27, 2012), aff'd by unpublished order, No. 120701 (Va. Mar. 15, 2013), this Court affirmed appellant's conviction of abduction with intent to defile where the circumstantial evidence was sufficient to prove his intent beyond a

---

[2] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." Otey v. Commonwealth, 61 Va. App. 346, 350 n.3, 735 S.E.2d 255, 257 n.3 (2012) (citing Rule 5A:1(f)).

reasonable doubt. In Ellis, the defendant repeatedly asked the victim to engage in consensual sex with him, embraced the victim despite her refusal to engage in sexual acts with him, and acknowledged to law enforcement that he had been attempting to perform sexual acts with the victim.

Here, unlike in Wagstaff and Ellis, there was no evidence presented at trial establishing that appellant intended to engage in sexual acts with K.F. Appellant grabbed K.F. by the wrist, refused to release her, and told her they were going for a ride. However, there was no evidence presented at trial that appellant made any statements or gestures suggesting his intent to engage in sexual acts with her. Even appellant's self-serving testimony that he did not have any contact with K.F. was insufficient to support a reasonable inference by the fact finder that he intended to abduct K.F. for the purpose of having sexual contact with her. See, e.g., Barnes v. Commonwealth, 47 Va. App. 105, 110 n.1, 622 S.E.2d 278, 280 n.1 (2005) (the rational fact finder standard of review on appeal "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw *reasonable inferences* from basic facts to ultimate facts" (emphasis added) (citation omitted)). To sustain a conviction under Code § 18.2-48, the Commonwealth was required to prove beyond a reasonable doubt that appellant harbored an intent to have sexual contact with K.F. We cannot say from our review of the record on appeal that the evidence was sufficient to prove beyond a reasonable doubt that appellant harbored the requisite intent to defile K.F.

### III. CONCLUSION

For the foregoing reasons, we conclude that the trial court erred by convicting appellant of abduction with intent to defile, in violation of Code § 18.2-48. Accordingly, we reverse the

judgment of the trial court, vacate appellant's conviction, and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.