COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Chafin and Senior Judge Clements
Argued at Richmond, Virginia


ANTHONY E. BUISSET, S/K/A
 ANTHONY EARL BUISSET

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0406-15-2               JUDGE JEAN HARRISON CLEMENTS
                                                         APRIL 19, 2016

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                              Leslie M. Osborn, Judge

             Buddy A. Ward, Public Defender, for appellant.

             John W. Blanton, Assistant Attorney General (Mark R. Herring,
             Attorney General, on brief), for appellee.


       Anthony E. Buisset, s/k/a Anthony Earl Buisset, appellant, was convicted of grand larceny.

On appeal he contends the trial court erred in denying his motions to strike on the ground that "the

evidence did not establish beyond a reasonable doubt that the trailer tongues had a market value of

$200 or more and in finding that the evidence was sufficient as a matter of law to prove that the

trailer tongues had such a market value." We affirm the decision of the trial court and appellant's

conviction.

                                           Facts

       We review the evidence in the light most favorable to the party who prevailed below.

Wainwright v. Newport News Shipbldg. & Dry Dock Co., 50 Va. App. 421, 430, 650 S.E.2d

566, 571 (2007).

---

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The victim owned property on which a double wide trailer was located. The victim hired appellant to perform yard work on the property. After appellant was to have completed the work, the victim visited the property and saw that two trailer tongues were missing. Trailer tongues attach to a trailer and connect with a towing vehicle when moving a trailer.

The victim stated the two trailer tongues were purchased by her father when he bought the double wide trailer about twelve to fifteen years earlier. The trailer tongues had been detached from the trailer and were located "in the wood line with a tree growing through the middle of them." The victim described the two trailer tongues as being constructed of "really thick metal" made into a triangle shape. She stated they attach to the double wide trailer, one for each side of the trailer, and they were made specifically for this trailer.

The victim testified the trailer tongues were in "good condition" and were black in color. She stated they "maybe had a couple of spots of rust on them just from being in the weather. But they were built to last the weather." The victim testified the trailer tongues were operational. The victim testified "the trailer company" advised her that trailer tongues are custom made for each trailer based on the weight and length of the trailer. When asked the value of the trailer tongues, the victim replied, "300 a piece, so 600."

On cross-examination, the victim testified she did not know the price her father paid for the trailer tongues and she was basing her opinion of the value of the trailer tongues on the cost to replace them. In rebuttal, the victim testified the trailer tongues were in good enough condition to use to move the trailer and she "eventually" planned to move her trailer using those trailer tongues.

Thomas Gill, who has worked for Virginia Home Manufacturer for forty years, testified that, through his job experience, he is familiar with trailer tongues and the manufacturing process of them. He stated trailer tongues are made of steel, they are functional for "a lifetime without

any damage to them," and they would not be damaged by every day weather conditions. Gill testified it would take a "catastrophe" to damage a trailer tongue. Gill testified it would require about $265 in materials to manufacture a trailer tongue at his plant. Gill also stated trailer tongues are "custom built" and they are "not interchangeable." They are manufactured at the same time a mobile home is made, and they generally are not sold separately from the home for which they are built.

The prosecutor asked Gill, "If you were to sell one of these items separate on the free market, how much would it be worth?" Gill responded that one trailer tongue would be worth about $525.

At the conclusion of the evidence, the trial court noted that Gill had testified the cost of materials for each tongue was more than $200 and Gill put a "value, if you want to buy one, [at] $525, which is replacement value." The trial court also noted the victim "said they were each worth more than $200." The court further found appellant's argument that the trailer tongues had only scrap value was speculative and no evidence was presented at the trial in support of that argument. The court found appellant guilty of the offense.

Analysis

When addressing a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence" to support it. Seaton v. Commonwealth, 42 Va. App. 739, 746, 595 S.E.2d 9, 12 (2004) (citation omitted). Under this standard, we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

- 3 -

Appellant does not argue the evidence failed to prove he stole the victim's trailer tongues. Rather, appellant argues the evidence failed to show the stolen trailer tongues had a value of $200 or more.

A conviction for grand larceny pursuant to Code § 18.2-95 requires proof that a defendant wrongfully or fraudulently took another's property valued at $200 or more, without the owner's permission, and with the intent to deprive the owner of that property permanently. See Crawford v. Commonwealth, 281 Va. 84, 109, 704 S.E.2d 107, 122 (2011). Proof that the value of the stolen goods is at least $200 "is an essential element of the crime of grand larceny, and the Commonwealth bears the burden of proving this element beyond a reasonable doubt." Britt v. Commonwealth, 276 Va. 569, 574, 667 S.E.2d 763, 765 (2008). The relevant value of the stolen property is its "current value" or "fair market value," Robinson v. Commonwealth, 258 Va. 3, 5-6, 516 S.E.2d 475, 476 (1999), which "is measured as of the time of the theft," Parker v. Commonwealth, 254 Va. 118, 121, 489 S.E.2d 482, 483 (1997).

The Commonwealth may prove the value of the stolen property in a number of ways, "including the testimony of a lay person as to the property's fair market value, the opinion of an expert, 'or by traditional accounting principles, starting with the original cost of the item and then factoring in depreciation or appreciation.'" Baylor v. Commonwealth, 55 Va. App. 82, 87-88, 683 S.E.2d 843, 845 (2009) (quoting DiMaio v. Commonwealth, 46 Va. App. 755, 764, 621 S.E.2d 696, 701 (2005)). "It is well established that 'the opinion testimony of the owner of personal property is competent and admissible on the question of the value of such property, regardless of the owner's knowledge of property values.'" Burton v. Commonwealth, 58 Va. App. 274, 280-81, 708 S.E.2d 444, 447 (2011) (quoting Walls v. Commonwealth, 248 Va. 480, 482, 450 S.E.2d 363, 364 (1994)). In addition, "'[i]t is not necessary to show that [the owner] was acquainted with the market value of such property or that he is an expert on values'

because '[h]e is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns.'" Crowder v. Commonwealth, 41 Va. App. 658, 664 n.3, 588 S.E.2d 384, 387 n.3 (2003) (quoting King v. King, 40 Va. App. 200, 212-13, 578 S.E.2d 806, 813 (2003)). "The weight of such testimony is, of course, affected by his knowledge of the value." Haynes v. Glenn, 197 Va. 746, 750-51, 91 S.E.2d 433, 436-37 (1956) (quoting 20 Am. Jur. Evidence § 892). However, determining "the weight of [the owner's] testimony (which often would be trifling) [is] left to the [fact finder]." Id. (quoting 3 Wigmore on Evidence § 716).

In Baylor, catalytic converters were stolen from vehicles and the only evidence presented as to the value of the stolen items was the cost of replacing the stolen catalytic converters with new ones. The parties stipulated that a catalytic converter may not be resold as an auto part in the Commonwealth. Baylor, 55 Va. App. at 88, 683 S.E.2d at 845-46. Therefore a used catalytic converter had no legal market value beyond the scrap or recycle value. Id. at 88, 683 S.E.2d at 846. We stated, "[t]hus, assuming without deciding that the Commonwealth established that there was no 'market' for used catalytic converters, it was required to demonstrate, beyond a reasonable doubt, that the 'actual value' of the converters at the time of the theft exceeded the statutory threshold." Id.

Here, Gill testified that one trailer tongue would be worth $525. In addition, Gill testified that manufacturing a trailer tongue would require $265 in materials alone. Therefore, the Commonwealth presented valuation evidence from an individual with forty years of experience in the manufactured homes industry showing that one trailer tongue had a value in excess of $200. In addition, the owner of the trailer tongues testified each trailer tongue had a value of $300.

Moreover, the Commonwealth presented evidence of the condition of the stolen trailer tongues. The victim testified the trailer tongues were operational, they were twelve to fifteen

years old, they were in good condition, they had "maybe" a few rust spots on them, and they were used one time when placing the trailer onto its current foundation. In addition, Gill testified trailer tongues are made of steel, will last a lifetime if not damaged, and will not deteriorate if left out in the weather.

Determining the appropriate weight of the testimony of Gill and the victim, as the owner of the stolen property, was an exclusive function of the trial court as the fact finder in this case. See Haynes, 197 Va. at 750-51, 91 S.E.2d at 436-37. Furthermore, "[w] do not evaluate the weight of evidence on appeal; that function resides with the trier of fact." Pelletier v. Commonwealth, 42 Va. App. 406, 422, 592 S.E.2d 382, 390 (2004). From the evidence presented, the trial court could conclude that the value of the stolen trailer tongues was $200 or more.

For the foregoing reasons, we affirm the decision of the trial court and appellant's conviction.

Affirmed.