COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and AtLee
Argued by videoconference


DELONTE A. WRIGHT

v.   Record No. 2060-19-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
APRIL 6, 2021


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Bryan T. Kennedy, Senior Assistant Public Defender, for
appellant.

Liam A. Curry, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Following a bench trial, Delonte Wright ("appellant") was convicted of statutory burglary

and grand larceny. The trial court sentenced appellant to five years' incarceration on each, with

all but fifteen months suspended. Appellant contends that the evidence is insufficient to support

either charge. For the reasons that follow, this Court affirms the judgment below.

## I. BACKGROUND

On appeal, this Court "consider[s] the evidence and all reasonable inferences flowing

from that evidence in the light most favorable to the Commonwealth, the prevailing party at

trial." Williams v. Commonwealth, 49 Va. App. 439, 442 (2007) (*en banc*) (quoting Jackson v.

Commonwealth, 267 Va. 666, 672 (2004)). So viewed, the evidence is as follows:

_____

[*] Pursuant to Code §17.1-413, this opinion is not designated for publication.

After living overseas, the Schlereth family moved back into their home in Fairfax on August 2, 2018. Two days later, the family took a trip to New Jersey. When they left, their belongings were partially unpacked. On August 8, 2018, the Fairfax County police called the Schlereths and informed them that their house had been broken into.

They returned home on August 10. They found that somebody had kicked in the door to their garage as well as the door from their garage to their home, both of which were in excellent condition before they left. Inside, they discovered that their property had been ransacked. After inventorying their property, the Schlereths determined that the intruder had stolen numerous credit cards, gift cards, several pieces of jewelry, a watch, three sets of cufflinks, a digital camera, sunglasses, a pen, and a blue and black backpack.

Two days prior, on the afternoon of August 8, 2018, Sean Harmon was working near the Schlereth household as an arborist. Around noon, Harmon spoke with Officer Keenan and his partner who were in the area looking for a suspect.[1] The officers told Harmon that they were looking for a "black male with dark clothing, [wearing] a backpack with some type of camouflage." The officers gave Harmon their contact information in case he saw anybody matching that description while in the neighborhood.

Approximately one hour later, as Harmon was preparing to drive away from his work site, he saw appellant walking a bike down the road with a black and blue backpack on his back. As Harmon drove past, he took two pictures of appellant on his cellular phone and transmitted those pictures to the officers with whom he had spoken earlier. He then called the officers and started relaying appellant's position to them. Harmon followed appellant for approximately three to five minutes until the officers arrived and approached appellant at a bus stop. During the time in which Harmon was following appellant, he never saw appellant drop or pick up any item.

_____

[1] The trial court excluded any reference to the separate crime being investigated.

When Officer Keenan arrived at the bus stop, he saw appellant placing a bicycle on a bike rack on the front of a bus. Next to appellant, on the curb, was a black and blue backpack. Officer Keenan searched appellant's person and found credit cards, gift cards, and jewelry, all of which had been stolen from the Schlereths' home. The backpack was identified as the one stolen from the Schlereths' home and contained the other stolen property—with the exception of the cufflinks, which were never recovered.

Later that day, Detective Robert Burke interviewed appellant. During the interview, appellant told Officer Keenan that approximately five minutes before encountering Officer Keenan, he was walking to the bus stop and saw something shining on the side of the road. Appellant claims that he investigated and found a collection of gift cards and jewelry. Appellant denied carrying a backpack and insisted that it was already at the bus stop when he arrived.

Appellant was indicted on charges of statutory burglary and grand larceny. Following a bench trial, appellant was convicted of both and sentenced to five years' incarceration on each, with all but fifteen months suspended. This appeal followed.

## II. STANDARD OF REVIEW

When reviewing whether the evidence is sufficient to support a conviction, this Court must "affirm the judgment unless [it] is plainly wrong or without evidence to support it." Shell v. Commonwealth, 64 Va. App. 16, 20 (2014) (quoting Smallwood v. Commonwealth, 278 Va. 625, 629 (2009)). In conducting its review, this Court "view[s] the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible" from the evidence. Id. (quoting Baylor v. Commonwealth, 55 Va. App. 82, 84 (2009)).

This Court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, this Court queries

only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)).

## III. ANALYSIS

Appellant contends that the evidence is insufficient to support either his statutory burglary or grand larceny conviction. This Court disagrees.

### A. Grand Larceny

Appellant contends that the evidence is insufficient to support his grand larceny conviction. Specifically, appellant contends that the Commonwealth was not entitled to rely on the inference regarding possession of recently stolen property because the Commonwealth did not disprove his hypothesis of innocence. Appellant, however, misapprehends the governing law.

"In a criminal prosecution for larceny, evidence showing '[p]ossession of goods recently stolen is *prima facie* evidence of guilt . . . and throws upon the accused the burden of accounting for that possession.'" Hackney v. Commonwealth, 26 Va. App. 159, 168 (1997) (quoting Hope v. Commonwealth, 10 Va. App. 381, 385 (1990) (*en banc*) (alteration in original)). "The inference derived from evidence of recent possession of stolen property may be enough, by itself, to support a conviction of larceny." Id. at 168-69. Thus, the inference arising from appellant's possession of recently stolen goods can support his grand larceny conviction in the absence of a reasonable hypothesis of innocence.

"The reasonable-hypothesis principle . . . is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Young v. Commonwealth, 70 Va. App. 646, 653-54 (2019) (quoting Commonwealth v. Moseley, 293 Va. 455, 464 (2017)). "The fact finder 'determines which reasonable inferences should be drawn from the evidence and

whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" Id. at 654. "[W]hether the evidence excludes all reasonable hypotheses of innocence is a 'question of fact' and like any other factual finding, it is subject to 'revers[al] on appeal only if plainly wrong.'" Id.

Appellant's hypotheses of innocence are two-fold. First, he claims that he found the credit cards, gift cards, and jewelry stolen from the Schlereths on the street a few minutes before being stopped by Officer Keenan. Second, he avers that the backpack that was stolen from the Schlereths—and contained other property stolen from their house—was at the bus stop before appellant arrived and that he just happened to be standing by it.

In essence, appellant claims that he found half of the stolen property abandoned on the road a few minutes before he was coincidentally stopped directly next to an abandoned backpack containing other property stolen from the Schlereths. This story strains credulity and, "[i]n its role of judging witness credibility, the [trial court was] entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." Marable v. Commonwealth, 27 Va. App. 505, 509-10 (1998). This is all the truer where evidence in the record directly refutes appellant's hypotheses of innocence. Harmon's testimony and photographs established that appellant was wearing the backpack before reaching the bus stop. Furthermore, Harmon testified that he never saw appellant stop to pick anything up despite following him during the time frame that appellant claims to have found the credit cards and jewelry. Given these circumstances, the trial court's rejection of appellant's hypotheses of innocence was not plainly wrong.

B.  Statutory Burglary

Appellant avers that the evidence is insufficient to support his statutory burglary charge.

Specifically, appellant contends that the trial court erred in applying the following inference[2]:

> The Commonwealth can establish a prima facie case that a
> defendant broke and entered by (1) proving that goods have been
> stolen from a house into which someone has broken and entered;
> (2) justifying the inference that both offenses were committed at
> the same time, by the same person, as a part of a criminal
> enterprise; and (3) proving that these goods were found soon
> thereafter in the possession of the defendant.

Finney v. Commonwealth, 277 Va. 83, 90 (2009) (quoting Guynn v. Commonwealth, 220 Va. 478, 480 (1979)).  Appellant argues that this inference is not applicable because the Commonwealth failed to prove that the larceny occurred at the same time as the breaking and entering and by the same person.[3]

Here, the evidence is sufficient to justify an inference that both offenses were committed at the same time and by the same person.  An individual violently kicked in the exterior door to the Schlereths' garage and the door from the garage to the interior of the house.  An individual then ransacked and stole their property.  There was no evidence of any motive for the breaking and entering other than the theft.  In the absence of some other evidence elaborating on the breaking and entering, a rational fact finder could conclude that the two were committed at the same time.  Nothing about the breaking and entering indicates the presence of two or more people.  Similarly, with the exception of a few cufflinks, all of the stolen property was found in the possession of appellant.  Combined, these facts are sufficient to raise the inference that appellant committed both crimes at the same time.

---

[2] Appellant further argues that, in the absence of this inference, the evidence was insufficient to prove he broke or entered the Schlereths' home.  Because this Court holds that the permissible inference applies, it need not reach either of those issues.

[3] Appellant does not challenge that the first and third prong are satisfied.

Appellant's reliance on Finney to argue the contrary is misplaced. In Finney, the victim's neighbor saw Finney walking down the street with his arms full of items. 277 Va. at 86. The victim had been in the process of moving to another home and had not been to this property in seven or eight days, but knew that all of his tools were present, the lock for the shed was in place, and the fence surrounding his property was intact, as of the time of the victim's last visit to the property. Id. at 86-87. Upon his return, the victim found that four or five vertical boards had been removed from his fence to create an opening, the doorjamb on the shed had been ripped apart, and the shed was mostly bare. Id. at 86. The victim testified that "he believed it would have taken more than one person to remove all the missing tools." Id. at 90. Law enforcement apprehended Finney later after the victim caught him returning to the property, entering through the opening in the fence, and going through the remaining items in the shed. Id. at 87.

The Supreme Court reversed Finney's conviction for statutory burglary. It focused on two factors which cast doubt on whether the breaking and the larceny were committed by the same person or at the same time. First, the Supreme Court noted that the victim testified that he believed multiple individuals were involved in the theft due to the quantity and weight of the tools that were stolen. Second, the evidence established that there had been multiple entries into the victim's shed over the course of multiple days, but only one breaking. These factors, in combination, elicited the reasonable hypothesis that another individual may have committed the breaking and that Finney entered subsequently without the necessity of a breaking to do so. Id. at 90.

These additional factors, however, are absent in this case. There is no evidence indicating that another person may have committed a breaking at an earlier date that allowed appellant to enter without committing a breaking. Similarly, there is no evidence of multiple entries or thefts from the Schlereths' home. Furthermore, there is no testimony that multiple

individuals were involved.  Indeed, the evidence supports a conclusion that a single individual committed the crimes.

The absence of these factors distinguishes this case from <u>Finney</u>.  Here, the evidence is sufficient to justify an inference that the same individual committed the breaking and entering and the theft at the same time.  Therefore, the trial court did not err in applying this inference.

## IV.  CONCLUSION

The trial court did not err in applying either inference.  Therefore, the evidence is sufficient to support both of appellant's convictions.  Accordingly, this Court affirms the judgment below.

<u>Affirmed.</u>