66 S.E.2d 509 (1951)
191 Va. 574
GLENN
v.
HAYNES.
Supreme Court of Appeals of Virginia.
September 5, 1951.
Thomas A. Williams, Thomas A. Williams, Jr., and A. T. Ellwanger, Jr., all of Richmond, for plaintiff in error.
John A. Cutchins, George E. Allen, Richmond, for defendant in error.
Before SPRATLEY, BUCHANAN, MILLER, SMITH, and WHITTLE, JJ.
SPRATLEY, Justice.
This action in detinue was instituted in December, 1949, by Ara C. Glenn against *510 Edward T. Haynes, defendant, for the recovery of certain goods and chattels consisting of jewelry of the alleged value of $29,765. The declaration consisted of two counts alleging the ordinary essentials to maintain the action. The defendant filed a plea of non detinet.
A jury was duly empanelled, and after the evidence of the parties had been concluded, the defendant moved to strike the plaintiff's evidence upon the ground that it was insufficient to support a verdict, if one should be returned in favor of the plaintiff. The motion was sustained and the jury returned a verdict for the defendant. The plaintiff duly excepted and thereafter obtained this writ of error.
The case arose as follows: Mrs. Glenn had been named as executrix in the last will and testament of her deceased husband, Ernest D. Glenn. Not desiring the appointment, she requested the defendant, Edward T. Haynes, an attorney at law, to qualify in her place and stead. Haynes agreed and, consequently, on February 11, 1947, the following contract, prepared by the defendant, was entered into between the parties:
"Witnesseth, that for and in consideration of the sum of $500.00 this day paid the said Edward T. Haynes, Attorney, the said Edward T. Haynes, Attorney, hereby agrees to accept employment representing as attorney and legal advisor and to qualify as executor, c. t. a. of the Estate of Earnest D. Glenn, deceased, in the Circuit Court of Chesterfield County.
"It is further agreed that the said Edward T. Haynes, Attorney, party of the second part, agrees to advise the said party of the first part in any and all capacities relative to the estate of the said Earnest D. Glenn and to make a full and complete investigation relative to certain insurance policies and all matters pertaining to a certain business transaction in the City of Waynesboro, Virginia, and that expenses in connection with the same are to be paid out of this fee, and to represent and fully protect the interests of the said party of the first part in this respect.
"It is further agreed that the said Edward T. Haynes, Attorney, party of the second part waives the right to any commissions in the settlement of this estate and agrees to pay the premium necessary for the posting of the required bond in the Circuit Court of Chesterfield County and that the said Edward T. Haynes will do all other detail work and furnish legal advice to the said party of the first part."
The $500 consideration was paid by Mrs. Glenn out of her personal funds as evidenced by her bank check of even date.
On June 18, 1948, Mrs. Glenn was committed to the Eastern State Hospital at Williamsburg, Virginia, as not of sound mind. She was discharged from that hospital as "not insane" on September 19, 1948.
On August 27, 1948, while an inmate of the hospital, she wrote Haynes, reciting the payment of the $500 to him for his services in her behalf, and requested that he expedite her release, and in the meantime take care of some of her personal business affairs. Haynes replied on August 30, 1948, and after informing her of steps taken by him in her behalf, said in part:
"I fully realize that someone should be appointed to administer your affairs, and of course you might give me a power of attorney which will enable me to do these things, while I am not anxious to do that. But I will do whatever I can without putting myself personally in a position of being responsible for your future acts.
"I have been very busy and I do not know whether or not I can get down to Williamsburg in the next few days but I will see what can be done within the next ten to fifteen days, and if I can do so I will get down to Williamsburg to talk to Dr. Jones and at the same time talk with you and see what I can arrange. In the meantime if you can prepare and send me a power of attorney authorizing me to go over to your home and see what conditions are there, it may be that that will give me sufficient authority to assist you in working out some of your affairs, but as stated in your letter I will not be able to do anything in three days. As a matter of *511 fact three days from the date of your letter has already passed.
"I will write Dr. Jones a letter and send him a copy of this correspondence and we will try to work out something within a reasonable time."
During the detention of Mrs. Glenn at the hospital from June 18th, to September 19th, a sister of the plaintiff, Mrs. W. S. Pedigo of Covington, Virginia, had taken into her possession the jewelry of Mrs. Glenn. Immediately upon her release on September 19th, the plaintiff requested Haynes to write Mrs. Pedigo and demand the delivery of the jewelry. On September 21, 1948, Haynes wrote Mrs. Pedigo the following letter:
"Dear Mrs. Pedigo:
"Mrs. Ara C. Glenn has requested me to write you and ask that you return to her home certain articles of jewelry and silverware which you now have in your possession. She has now returned to her home and would like to have these articles returned at once.
"I will appreciate it if you will give this matter your prompt attention and arrange to return such items as you might have at your earliest convenience."
On October 7th, Mrs. Pedigo delivered the jewelry to the defendant at his office in Richmond, Virginia. Mrs. Pedigo explained that she did not take the jewelry to her sister's home as requested, but brought it to the defendant's office, as she wished to have a witness to its delivery. She requested Haynes to take her out to Mrs. Glenn's home to deliver it. Haynes said he was too busy to go out that day but would make the delivery to Mrs. Glenn within a few days. The secretary of the defendant then made a list of the jewelry, describing each item. This the defendant signed in the name of "Edward T. Haynes, Attorney for Mrs. E. D. Glenn," and gave it to Mrs. Pedigo as a receipt.
On October 22nd, Mrs. Glenn wrote Haynes a letter about some personal matters, in which she said: "I do think you should have gotten my jewelry all back from Covington, Virginia." Haynes replied by letter on October 25th, and, after answering certain questions, said: "For your information the jewelry has been placed in my safekeeping and will be turned over to you at such time as I think you are in a position to receive it and properly care for it. While it is in my possession, I know it will not get into anybody's hands who will dispose of it."
On Sunday, November 7, 1948, Haynes went with the sheriff of Chesterfield county, Virginia, to the home of Mrs. Glenn, where she was taken in custody on a charge of insanity. Accompanied by the sheriff and Haynes, she was carried to Chesterfield Court House. A lunacy commission was there held, plaintiff was discharged, and the sheriff took her back to her home.
Haynes testified that within the week of October 7, 1948, he went with several other persons to Mrs. Glenn's home with the express purpose of delivering the jewelry to her. He said he went again sometime in November. He declared that he felt it unwise to make delivery on those occasions because of Mrs. Glenn's condition. He took the jewelry back to his home and placed it in his iron safe along with his own money and valuables.
During Haynes' absence from Richmond between December 27th and January 1st, 1949, his house was broken into and his safe robbed of its contents, including Mrs. Glenn's jewelry.
Mrs. Glenn testified that the defendant did not, between October 7, 1948, and January 1, 1949, ever, at any time, offer or attempt to deliver the jewelry to her. She said that he did not advise her of the theft of her jewelry until after she had heard it from other sources. Subsequently she called Haynes and told him that she had not been notified that her jewelry had been stolen.
Evidence was taken as to the value of the jewelry; but in the view we take of the case it is not material here.
The plaintiff established property in the jewelry sought to be recovered. She had the right to its immediate possession. It was properly identified, its value alleged, and the defendant shown to have had the possession prior to the institution of the *512 action. She relied upon an ordinary contract of bailment; and consequently made out a prima facie case when she showed delivery of jewelry to Haynes and the latter's failure to return it on demand, or as agreed on. Revenue Aero Club v. Alexandria Airport, 192 Va. 231, 234, 64 S.E. 2d 671.
The written evidence and the circumstances of the dealing between the parties establish, as a matter of law, the relationship of attorney and client between the parties.
The receipt of October 7, 1948, by "Edward T. Haynes, Attorney for Mrs. E. D. Glenn," together with the written correspondence and dealings between the parties sustain this conclusion irrefutably. It will be remembered, in addition, that Mrs. Glenn paid Haynes $500 out of her personal funds, and that he agreed to accept employment representing her "as attorney and legal advisor and to qualify as executor, c. t. a.," as well as to do "all other detail work and furnish legal advice to the said party of the first part." This relation continued until the return of the jewelry, or proper excuse had been made for its non-delivery.
By statute in Virginia, it is provided that:
"Every attorney at law shall be liable to his client for any damage sustained by him by the neglect of his duty as such attorney. If any attorney received money for his client and fail to pay the same on demand, it may be recovered from him by warrant, or by suit, or motion, according to the amount, and damages in lieu of interest, not exceeding fifteen per centum per annum until paid, may be awarded against him." Code of Virginia, 1950, section 54-46.
Analogous to the receipt of personal property by an attorney is the collection of money for his client. The circumstances under which he will be liable for the loss of money collected or for client's property received are precisely the same as those which govern in the case of any other trustee. He will not be excused in the event of loss unless he exercises the same caution in respect to protecting the property of his client as a prudent man would exercise in regard to his own property of like character.
"In regard to money which an attorney collects for his client, the attorney, so long as he chooses to treat and preserve the fund as a trust fund, occupies the relation of a trustee, and the circumstances under which he will be liable for its loss are precisely those which govern in the case of any other trustee." 5 Am.Jur., Attorneys at Law, section 131, page 338.
"An attorney who has collected money for his client and not yet paid it over ordinarily holds the same as a trustee rather than as a debtor, and his duties and liabilities with respect thereto are much the same as any other bailee, trustee, or fiduciary." 7 C.J.S., Attorney and Client, § 139, page 976.
"An attorney may be employed without formalities of any kind. The contract may be made by parol, and it is often largely implied from the acts of the parties. Neither is the relation dependent upon the payment of fees." 2 M.J., Attorney and Client, section 12, page 388.
An attorney is not bound to undertake to render services for another without compensation and if he voluntarily engages to do so he is liable for the consequences of his improper management, and cannot allege as a defense lack of consideration for his services. Stephens v. White, 2 Wash. 2 va. 203.
The general rule as to liability of an attorney for negligence is well stated in 2 R.C.L., Attorneys at Law, section 95, pages 1012, et seq., as follows: "The law implies a promise on the part of attorneys that they will execute the business intrusted to their professional management, with a reasonable degree of care, skill, and dispatch, and they are liable to an action if guilty of a default in either of these duties whereby their clients are injured, and this liability of the attorney is not affected by the client's diligence or the want of it, unless stipulated for by special contract. * * * While there can be no doubt that for any misfeasance or unreasonable neglect *513 of an attorney whereby his client suffers a loss an action may be supported and damages recovered to the amount of that loss, yet it is equally well established that an attorney in the management of his professional business is not bound to extraordinary diligence, but only to use a reasonable degree of care and skill, reference being had to the character of the business he undertakes to do, and is not to be answerable for every error or mistake, but, on the contrary, will be protected if he acts in good faith, to the best of his skill and knowledge, and with an ordinary degree of attention. While some law writers and some adjudged cases state that an attorney is liable to his client for `gross negligence' only, yet it would appear that even when such term is used it merely means the want or absence of `reasonable care and skill.'"
See to the same effect 5 Am.Jur., Attorneys at Law, section 125, page 334, and 7 C.J.S., Attorney and Client, § 140, page 977.
Directly in point is Pidgeon v. Williams' Admr's, 62 Va. 251, 21 Gratt. 251. There an attorney having received Confederate currency for a debt due his client after deducting his fees deposited the client's money for him in a bank then solvent. Before the client called upon the attorney or the bank for his money, the bank failed and the money was lost. Answering the question whether the attorney was liable, the court said: "It is well settled law, that the responsibility of attorneys is that of ordinary bailees. If they have acted to the best of their skill, and with a bona fide and ordinary degree of attention, they will not be responsible."
We refrain from expressing any opinion on the evidence which relates to the care exercised by the defendant both for the protection of the jewelry, while in his possession, and in its prolonged detention from the plaintiff. In accordance with general rules, the degree of care required was for the determination of the court, and the care exercised was a question of fact for the determination of the jury, under proper instructions from the court.
The plaintiff having established her title and right to the possession of the jewelry, having shown its delivery to Haynes for her account, and Haynes failure to return it to her on demand, she made out a prima facie case for its recovery, and the burden shifted to the defendant to show that its non-delivery was not due to his failure to use reasonable care for its protection and safe delivery to its owner, under the circumstances of his engagement. 26 C.J.S., Detinue, § 20(a), page 1278.
Accordingly, we are of opinion to set aside the verdict of the jury, reverse the judgment of the trial court, and remand the case for further proceedings in accordance with the views herein expressed.
Reversed and remanded.