# Richmond

VIVIAN RUTH HAYNES (now VIVIAN RUTH PRINGLE), EXECUTRIX OF THE WILL OF EDWARD T. HAYNES, DECEASED v. ARA C. GLENN

March 5, 1956.

Record No. 4471.

Present, Hudgins, C. J., and Eggleston, Spratley, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Cutchins, Cutchins, Wallace & Kessler,* for the plaintiff in error.

*Thomas A. Williams* and *Thomas A. Williams, Jr.,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

This appeal which is the sequel to that involved in *Glenn* v. *Haynes,* 192 Va. 574, 66 S. E. (2d) 509, 26 A. L. R. (2d) 1334, has its origin in an action in detinue instituted in December, 1949, by Ara C. Glenn against Edward T. Haynes for the recovery of certain items of jewelry of the alleged total value of $29,765. After a plea of *non detinet* there was a trial before a jury. The evidence showed that the jewelry had been deposited with Haynes, an attorney, for safekeeping for his client, Mrs. Glenn; that Haynes placed the jewelry in a safe at his residence in the City of Richmond, and that during his absence from the city the house was broken into and the safe robbed of its contents, including the jewelry of Mrs. Glenn. At the conclusion of all of the evidence the trial court struck the evidence upon the holding that it failed to show a breach of the contract of bailment under which the jewelry had been deposited with Haynes. A verdict and judgment for the defendant necessarily followed.

On the first appeal we reversed the judgment and remanded the case for a new trial, holding that the evidence established, "as a matter of law, the relationship of attorney and client between the parties" (192 Va., at page 579, 66 S. E. (2d), at page 512); that the evidence on behalf of the plaintiff made out a *prima facie* case for recovery, casting the burden on the defendant to show that failure of delivery was not due to his lack of reasonable care for its protection and safe delivery to its owner. 192 Va., at page 582, 66 S. E. (2d), at page 513.

Pending a new trial Haynes died and the suit against him was revived in the name of his executrix. Some months thereafter the

executrix "in person and by counsel" appeared in open court "admitting negligence on the part of the defendant," Haynes, in the care and custody of the jewelry. By agreement of the parties "proof as to the articles involved and their respective values" was submitted to the court without a jury. After hearing the evidence the trial court found that the plaintiff was entitled to recover the nine items of jewelry specified in her pleadings, namely, a diamond and platinum bar pin of the value of $750, a diamond and platinum ring of the value of $4,900, a diamond and platinum dinner ring of the value of $750, a string of pearls of the value of $2,000, and in addition thereto a diamond and platinum watch, a white gold watch, a gold bar pin, a white gold wedding ring, and a hospital pin, the respective values of which were stated in the order as "not proven."

A motion to set aside this finding was overruled and judgment was entered thereon for the recovery of the nine described items, with interest on those of the "total proven value" of $8,400, from "October 7, 1948, the date of the alleged conversion." To review that judgment the present writ of error was allowed.

As we interpret the assignments of error and argument of the executrix, no question is raised as to the correctness of the adjudication that the plaintiff is entitled to recover the nine specific items of jewelry. The executrix makes these contentions: (1) There is a lack of sufficient competent evidence to establish the value of the four items of jewelry, or any of them, as fixed in the final judgment; and (2) There is a lack of sufficient corroboration of the testimony of the plaintiff with respect to the description and value of these four items.

The evidence adduced at the second trial is before us in narrative form and consists of a statement of the testimony of the plaintiff, Ara C. Glenn, and that of E. L. Fall, an employee of a local firm dealing in jewelry, with respect to the description and value of the several items of jewelry. The defendant offered no evidence on the subject. Since we are concerned only with the value of the four items of jewelry as fixed in the final judgment, our discussion will be limited to the evidence pertinent to these.

The narrative recites that "Mrs. Glenn testified generally that she had known diamonds since she was 16 years old; that she had visited wholesale diamond markets and had from time to time had her jewelry reset."

Fall testified that he was employed by a jewelry firm in Richmond, "that he had been in the business for many years and was

duly qualified as an expert." He further stated that the values which he placed upon the articles hereinafter mentioned were substantially the same as those which his employer would charge for similar articles. Fall had never seen the articles in question and based his valuations of them on the descriptions given by the plaintiff at the trial.

The evidence of these two witnesses with respect to the value of the four contested items may be thus summarized:

Mrs. Glenn testified that the diamond platinum bar pin was set with a one carat blue white perfect diamond in the center with a 65 point diamond on each side. She said that she knew the size and character of these stones. She further testified that she valued the pin at $1,250, and that was the amount at which it was purchased from a firm at Cincinnati.

Fall testified that a one carat blue white perfect diamond such as that described by Mrs. Glenn, was worth from $1,100 to $1,200. He further said that a 65 point diamond if not "blue white and perfect" was worth "about $200." Thus, according to his testimony the stones in the pin were worth from $1,500 to $1,600.

The lower court valued this bar pin at $750, or well within the value set by the two witnesses.

Mrs. Glenn testified that the diamond platinum ring was made up of a central setting of five 80 point diamonds with nine 80 point diamonds "circling around" the center setting. All of the diamonds, she said, were "blue white and perfect." This ring, she said, had been made to her order by a wholesale jeweler and was valued by her at $20,000.

Fall testified that if the diamonds were "blue white and perfect" each would be worth from $750 to $800, and if not of that type, each would be worth from $350 to $800.

The lower court valued the ring at $4,900, which equals the value of the fourteen diamonds taken at the lowest figure of $350 each.

Mrs. Glenn described the diamond platinum dinner ring as having a central setting of a one carat diamond with a 60 point diamond on each side. These stones, she said, were of like character as those in the diamond bar pin, the item first described. She valued the dinner ring at $2,500.

Fall valued the diamonds in this ring at the same figure which he had placed upon those in the bar pin, the item first described. If

"blue white and perfect," he said, they were worth from $1,100 to $1,200 each. If the diamonds were of the first type he valued the ring at from $2,000 to $2,500.

The lower court placed a value of $750 on this dinner ring. Accepting Mrs. Glenn's statement that the stones were "blue white and perfect," this value is well within the figure testified to by the witnesses.

The last item in controversy is a pearl necklace which Mrs. Glenn said was made up of graduated genuine pearls. She testified that this necklace had been made up by a wholesale jeweler in New York City and that the pearls had been selected by her. It was, she said, a gift from her husband to her and that she had seen the bill for $5,000 which he had paid for it.

Fall testified that if the pearls were of the character described and testified to by Mrs. Glenn, the necklace "could easily be worth $10,000."

The lower court placed a valuation of $2,000 on this item.

■ At the trial below counsel for the executrix objected to the testimony of these witnesses on the ground that neither had been shown to be an expert on the character, quality or value of diamonds. There is no merit in this contention. As is said in 20 Am. Jur., Evidence, § 891, p. 748, "The standard of qualification of a witness by whom opinion testimony regarding property values is offered is usually not fixed very high. It is not required of the witness that he be an expert or skilled in the strict sense of such terms. It is universally recognized that opinion testimony of nonexperts who have sufficient knowledge of the value of the property in question or have had ample opportunity for forming a correct opinion as to it is admissible." See also, 32 C. J. S., Evidence, § 545-b, pp. 284, 285; *Kerr* v. *Clinchfield Coal Corp.*, 169 Va. 149, 155, 156, 192 S. E. 741, 743.

Moreover, "It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns. The weight of such testimony is, of course, affected by his knowledge of the value." 20 Am. Jur.,

Evidence, § 892, p. 751. See also, 20 Am. Jur., Evidence, § 894, pp. 751, 752; 32 C. J. S., Evidence, § 545-e, p. 315 *ff.*

In Wigmore on Evidence, 3d Ed., Vol. 3, § 716, p. 48, the author says: "The *owner of an article*, whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury, and courts have usually made no objections to this policy."

For a collection of cases where the value of jewelry has been shown by the testimony of nonexpert owners see Annotation, 37 A. L. R. 2d, at page 1033.

Under these authorities the testimony of Mrs. Glenn was admissible to establish the value of the items in question, and its weight was for the court as the trier of fact. But aside from this, her testimony shows that her knowledge of the character, quality and price of diamonds extended beyond that of a mere owner. As has been said, she testified that she "had known diamonds" since she was a young girl and had visited and dealt with various diamond markets from time to time. Her description of the several items of jewelry in question confirms her statement that she had had considerable experience in dealing with such articles. Thus, her competency was based on ownership coupled with experience. For a collection of similar cases see Annotation, 37 A. L. R. 2d, p. 992 *ff.*

Neither do we agree with the argument that the witness, Fall, was incompetent to testify as to the value of these articles. He testified that he had been in the jewelry business for many years and was an expert on the subject. There is no evidence to the contrary. Moreover, he testified that his estimate of the value of these articles was in accord with what his employer would charge for similar articles.

As has been said, Fall had never seen the articles in question and testified as to their value from the description which Mrs. Glenn gave of them. This method of proving the value of articles which cannot be produced for inspection is frequently used. Such testimony was admissible, its weight being for the court as the trier of fact. 32 C. J. S., Evidence, § 545, pp. 282, 283.

The contention of the appellant executrix with respect to the lack of necessary corroboration of the plaintiff's testimony is thus stated in her brief: "That there was no proper legal basis for the testimony of E. L. Fall, introduced as an expert witness, the testimony of the plaintiff being entirely uncorroborated and incompetent; that in order to invoke the aid of an expert in determining

the value of an article, the basis cannot rest alone upon the self-serving declaration of the plaintiff but must be corroborated by someone who had seen, or had knowledge of the jewelry in question."

As we understand it, the contention is that the testimony of the plaintiff at the second trial as to the description and character of the jewelry cannot be taken as the basis for a valuation by Fall, unless and until her testimony as to such description and character has been corroborated by someone who has seen or has had knowledge of the articles of jewelry. We do not agree with this argument.

The material portion of Code, § 8-286, reads thus: "In an action or suit by or against a person who, from any cause, is incapable of testifying, * * * no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; * * * ."

One of the purposes of the statute is to prevent a surviving party from having the benefit of his own testimony where, by reason of the death of his adversary, the latter's personal representative is deprived of the decedent's version of the transaction. 58 Am. Jur., Witnesses, § 215, p. 147.

It appears from the record of the former proceedings in the pending case, of which we may take judicial notice,[1] that the original defendant, Edward T. Haynes, was alive and present at the first trial. At that trial the plaintiff testified fully as to the description and character of the jewelry. Haynes had full opportunity to contravert her testimony, but did not do so. He admitted in his testimony that he had come into possession of the jewelry as then described by her. He admitted having given the plaintiff a written receipt in which the four items in question are described, respectively, as "1 diamond bar pin," "1 diamond solitaire ring," "1 diamond dinner ring," and "1 string of pearls." These admissions of the defendant himself and his acquiescence in the plaintiff's description of the articles are circumstances which amply corroborate her testimony on the subject. See *Martin* v. *Martin*, 166 Va. 109, 116, 184 S. E. 220, 223, and *Forbes* v. *Forbes*, 182 Va. 636, 640, 641, 29 S. E. (2d) 829, 831, holding that corroboration may be established by circumstantial evidence.

The testimony of Fall, which we have related, amply corroborates

---

[1] 20 Am. Jur., Evidence, § 86, p. 104; 31 C. J. S., Evidence, § 50-b, pp. 621-622; *West* v. *L. Bromm Baking Co.*, 166 Va. 530, 536, 186 S. E. 291, 294; *Young* v. *Commonwealth*, 194 Va. 780, 782, 75 S. E. (2d) 479, 480.

that of the plaintiff as to the *value* of the four items of jewelry with which we are here concerned.

■ Complaint is made that the evidence on behalf of the plaintiff fails to show the value of the various items at the time of their alleged conversion, in the fall of 1948. It is true that the plaintiff did not specifically state that the valuations placed by her on the jewelry were as of the time of its conversion. But there was no objection to the evidence on this ground. Both sides, as well as the trial court, considered that the evidence related to the value as of the proper time. It is too late for the defendant to raise the question for the first time on this appeal.

Moreover, it is generally held that evidence of value a reasonable time prior and subsequent to the conversion is admissible, its weight being for the trier of fact. 53 Am. Jur., Trover and Conversion, § 184, p. 946; 32 C. J. S., Evidence, § 545-a, pp. 281, 282; *Southern Express Co.* v. *Jacobs*, 109 Va. 27, 31, 63 S. E. 17.

The testimony of the plaintiff as to the value of the four items of jewelry in question, taken in connection with that of the witness, Fall, amply supports the findings of value fixed by the trial court. In actions of this character the finding of the value of the property converted is largely within the discretion of the fact-finding body. 89 C. J. S., Trover and Conversion, § 201, p. 661. The fact that under the evidence the trial court might have awarded the plaintiff a larger amount is no concern of the defendant. Since the plaintiff has filed no cross-error as to the adequacy of this finding, it should stand.

■ No question has been raised as to the validity of the judgment for the recovery of the five articles for which the trial court found the values were "not proven." Accordingly, we treat the lack of an ascertainment of the value of these articles as having been waived. See *MacPherson* v. *Green*, 197 Va. 27, 35, 87 S. E. (2d) 785, 791. *Cf.* Burks Pleading and Practice, 4th Ed., § 131, p. 244; *McClure Grocery Co.* v. *Watson*, 148 Va. 601, 607, 139 S. E. 288.

For these reasons the judgment is

*Affirmed.*