PRESENT:  All the Justices

WANDA S. MARTIN, EXECUTOR OF THE
ESTATE OF MARGARET McDANIEL STARR,
DECEASED

v.  Record No. 170524

GARY LAHTI, ET AL.

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
February 22, 2018

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Wanda S. Martin, the executor of her mother's estate, challenges the trial court's

exclusion of evidence.  She contends the trial court erred in excluding certain proffered

statements that, in her view, should have been admitted as lay opinion under Rule 2:701 of the

Virginia Rules of Evidence.  She also challenges the trial court's exclusion of a statement the

decedent made after the surgery.  She asserts that this statement should have been admitted under

Code § 8.01-397, often referred to as the "Deadman's Statute."  We conclude the trial court did

not abuse its discretion in excluding these items of evidence and, accordingly, we affirm.

BACKGROUND

On March 21, 2011, Margaret Starr was diagnosed with acute pancreatitis during a visit

to the emergency room of the Danville Regional Medical Center.  Abdominal ultrasound

imaging indicated that Starr's gallbladder "contain[ed] a small amount of sludge and tiny stones.

Tiny amount of pericholecystic fluid."  Dr. Gary Lahti, who had previously operated on the

patient, recommended removal of Starr's gallbladder.

The record contains a consent form, which provides, in relevant part, "[a]lternative

methods of treatment and the risks and benefits of these alternatives have also been explained to

me, including the possibility of, and risks and benefits of, no treatment at all." Because Starr's hand was shaky, Martin signed the consent form on her behalf.

Dr. Lahti performed the surgery on March 24, 2011. Martin testified that the operation was to proceed laparoscopically, but because Dr. Lahti nicked a bowel during the surgery, Dr. Lahti had to "open her up." Starr died approximately one week after the operation due to complications from the surgery.

Martin brought a medical malpractice action against Dr. Lahti and the Danville Surgical Center.[1] One of the counts alleged that Dr. Lahti did not obtain Starr's informed consent to the procedure. Specifically, the plaintiff alleged that the defendants "failed to explain that a conservative non-operative medical course was a reasonable option." The complaint further alleged that "[i]f the patient had been properly advised of her options, relative risks, and/or benefits, and the alternatives to surgery, she would not have undergone the procedure on March 24, 2011."

The defendants filed a demurrer to the informed consent count on the basis that the plaintiff's allegations were not sufficient for the plaintiff "to proceed on a claim for lack of informed consent." The defendants also asked for a bill of particulars. The trial court denied the demurrer but granted the bill of particulars. In response, the plaintiff submitted a bill of particulars in which she amplified her allegations of lack of informed consent. This bill of particulars stated that Dr. Lahti testified at his deposition that he had informed Starr that waiting could lead to a life-threatening recurrence of pancreatitis.

---

[1] The plaintiff originally brought an action alleging multiple counts against several defendants. The plaintiff later nonsuited all claims save for the informed consent claim.

2

The defendants then filed a motion to dismiss the informed consent count. The defendants argued that the plaintiff "ha[d] not adduced a single piece of admissible evidence to support" the contention that she would not have undergone the surgery. And, "[w]ithout testimony or like evidence from the decedent that she would have refused the surgery [upon full disclosure of her options, relative risks, benefits, and the alternatives to surgery] . . . Plaintiff's claim for lack of informed consent fails as a matter of law." The court granted the motion to dismiss. Following a motion to reconsider filed by the plaintiff, the court held a hearing at which the plaintiff presented her evidence of proximate causation.[2] The evidence consisted of testimony from Martin and Rachel Meeks, Starr's sister.

Martin testified that she was very close to her mother, who would "talk to her about anything." Martin would see her mother "about twice a day." It was Martin's practice to take her mother to the doctor. Martin would talk to her mother about what the doctor had said, and the two would discuss her health care decisions.

Starr had gone through a number of surgeries. In 1980, she underwent a hysterectomy and treatment for cancer. In 2001, Dr. Lahti performed a surgery to address Starr's colon cancer. In addition, Starr had several operations on her eye. Starr initially told Martin she did not want to go through the surgeries on her eye, that she did not want "more cutting on her." Despite this initial reluctance, Starr agreed to go through with the operations on her eye. Martin testified that her mother did not want more surgeries, "just only necessary. She was tired of being cut up."

---

[2] The unusual way the court addressed the issue – a motion to dismiss followed by a hearing, which the plaintiff characterizes as a "hybrid between a demurrer and a motion for summary judgment" – is not before us. The plaintiff, on appeal, expressly notes that she does not object on this ground.

Martin took her mother to the emergency room on March 21, 2011. Doctors discovered that she was suffering from pancreatitis and that she had gallstones. Starr stayed at the hospital for several days so doctors could conduct additional tests. During her mother's stay at the hospital, Martin visited her and spent hours in her company. Starr steadily improved and she regained her appetite.

Several doctors told Martin that her mother "need[ed] her gallbladder out." Martin remembered that her mother was nervous and unsure she wanted to have the surgery. Starr relayed to Martin that "Dr. Lahti told [Starr] that she needed this surgery." Martin acknowledged that her mother felt comfortable with Dr. Lahti because of her past experience with him.

Just before taking Starr into surgery, Dr. Lahti came in the room and made a brief statement to Martin about the need for surgery. He did not mention a non-surgical alternative to Martin. Likewise, Starr did not mention to Martin anything about alternatives to the surgery. In Martin's view, her mother "would have discussed that with" her. Plaintiff's counsel asked Martin the following question:

> Based on your personal experience and observations, based on your years of having conversations with your mother about her health care needs, based on Dr. Lahti's conversations with you in the presence of your mother prior to surgery, based on your knowledge of your mother's general feelings about surgery, do you have an opinion as to whether your mother would have agreed to the proposed gallbladder surgery if she had been given the type of information contained in the first five pages of that Bill of Particulars?

Martin responded "if the doctor would have told her about the alternatives, she would not have had that surgery." She also testified that if her mother had known about alternatives to the surgery, she would have accepted the alternatives rather than undergo the surgery.

Martin agreed that Dr. Lahti consulted with her mother on the morning of the surgery, and that neither Martin nor other family members were present during the 35- to 40-minute conversation between Dr. Lahti and her mother.

Rachel Meeks, Starr's sister, also testified. She described her relationship with Starr as very close. Meeks spoke with Starr almost every day. She stated that Starr did not want to have surgery and "didn't believe in that." Starr also told her that she "believed in [Dr. Lahti] and didn't want nobody else operating on her." Meeks testified that Starr trusted Dr. Lahti "[a]ll the way." Meeks spoke with her sister about the surgery, but Starr did not mention anything to her about "Dr. Lahti having given her any alternatives or options." Meeks believed Starr would not have agreed to the surgery had she known about alternatives to the procedure. Starr told Meeks that "she did not want to have surgery, but she had so much faith and confidence in Dr. Lahti" that she was going to go forward with the surgery.

The trial court excluded as irrelevant the following statement Starr made to Martin following the surgery: "I thought that this would be an easy operation."

Following the hearing, the trial court dismissed the informed consent count. The court reasoned that although the patient "is not here to testify about what was or was not explained to her and whether or not she would have decided differently with more or different information," the plaintiff could prove her case through circumstantial evidence. The court concluded, however, that the plaintiff's proffered evidence was "undeniably hearsay and . . . is, at its heart, speculative." After the plaintiff nonsuited her remaining claims, the court entered a final order of dismissal and this appeal followed.

5

ANALYSIS

"To succeed on an informed consent claim, the plaintiff must establish that the physician breached the standard of care by failing to disclose the material risks associated with the treatment or procedure, or the existence of alternatives if there are any, thereby precluding the plaintiff from making an informed decision about whether to undertake a particular procedure or course of treatment." *Allison v. Brown*, 293 Va. 617, 628-29, 801 S.E.2d 761, 768 (2017). In addition, "the patient must prove that she would not have agreed to the treatment or procedure had the physician made a proper disclosure of the risks and alternatives associated with the treatment or procedure." *Id.* at 629, 801 S.E.2d at 768.[3] In the present appeal, we focus our attention on this second point.

I.   THE LAY OPINION TESTIMONY CONCERNING WHAT WAS DISCLOSED TO THE PATIENT AND WHAT THE PATIENT MAY HAVE DONE WAS SPECULATIVE AND INADMISSIBLE.

Martin sought to prove lack of informed consent via circumstantial evidence. She argues that her testimony and that of her aunt was admissible under Rule 2:701, which permits lay opinion testimony. That rule provides as follows:

**Rule 2:701 OPINION TESTIMONY BY LAY WITNESSES**

Opinion testimony by a lay witness is admissible if it is reasonably based upon the personal experience or observations of the witness and will aid the trier of fact in understanding the witness'

---

[3] Although this case does not call upon us to decide the question, we note that this Court has not affirmatively examined the merits of the objective or subjective approaches to proving causation in an informed consent case. *See, e.g.*, *Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d 119 (Tenn. 1999) (discussing the approaches employed by other states). Under the subjective approach, "[c]ausation . . . is established solely by patient testimony. Patients must testify and prove that they would not have consented to the procedures had they been advised of the particular risk in question." *Id.* at 122. Under the objective approach, courts address causation "in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance." *Id.* (quoting *Canterbury v. Spence*, 464 F.2d 772, 791 (D.C. Cir. 1972)). Under that view, the patient's testimony is relevant but not controlling. *Id.*

6

perceptions.  Lay opinion may relate to any matter, such as -- but not limited to -- sanity, capacity, physical condition or disability, speed of a vehicle, the value of property, identity, causation, time, the meaning of words, similarity of objects, handwriting, visibility or the general physical situation at a particular location.  However, lay witness testimony that amounts only to an opinion of law is inadmissible.

We review a circuit court's admission or refusal to admit lay opinion testimony for an abuse of discretion.  *See Harman v. Honeywell*, 288 Va. 84, 97-100, 758 S.E.2d 515, 523-24 (2014).

Like statutes, we construe rules of evidence based on their plain language.  *See BBF, Inc. v. Alstom Power, Inc.*, 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007).  Precedent, both before and after the rules were adopted, also guides our interpretation of the rules of evidence.  "The Virginia Rules of Evidence are intended to state in clear, succinct and readily understood form, the core concepts of evidence that have previously been applicable in Virginia—they do not 'change' evidence principles, but are intended to state them clearly."  Charles E. Friend & Kent Sinclair, The Law of Evidence in Virginia § 1-2 (7th ed. 2017).

We agree with the plaintiff's general proposition that a plaintiff may prove her case by adducing circumstantial as well as direct evidence.  *See, e.g.*, *Etherton v. Doe*, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004) ("[I]t is axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial evidence.").

Although there are textual variations between Virginia's Rule 2:701 and the comparable rule adopted by other states and the federal courts, it is common ground that the rule permitting lay opinion testimony does not open the door to opinions that are not based on the perception of

the witness or on the witness's personal knowledge.[4] *See, e.g.*, *Harman*, 288 Va. at 98-99, 758 S.E.2d at 523-24. Such an opinion is speculative. *See, e.g.*, *United States v. Marshall*, 173 F.3d 1312, 1315 (11th Cir. 1999) (holding that admitting lay opinion was an abuse of discretion because "the opinion of a lay witness on a matter is admissible only if it is based on first-hand knowledge or observation . . . . In this case, [a DEA Agent]--who was not present at any of the meetings between [the informant] and the defendants--had no personal knowledge regarding the origin of the cocaine given to him by [the informant]"); *Jacobs v. General Electric Co.*, 880 A.2d 151, 158 (Conn. 2005) (concluding trial court abused its discretion by admitting lay opinion about the defendant's motivation for firing the plaintiff when "neither witness participated in the layoff decision" or had "firsthand knowledge of the basis for the decision"); *Chesser v. State*, 30 So. 3d 625, 628 (Fla. Dist. Ct. App. 2010) ("Opinion evidence of matters perceived by one of the senses, such as distance, time, size, weight, form, or identity, have usually been admitted. Non-expert witnesses have been allowed to give opinion testimony of these matters when they have knowledge based upon their personal perception . . . However, if the opinion is nothing more

---

[4] We acknowledge that there are instances when lay opinion testimony is permissible despite a lack of, or minimal, personal knowledge of the witness. For example, "[i]t is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values. It is not necessary to show that he was acquainted with the market value of such property or that he is an expert on values. He is deemed qualified by reason of his relationship as owner to give estimates of the value of what he owns." *Crowder v. Commonwealth*, 41 Va. App. 658, 664 n.3, 588 S.E.2d 384, 387 n.3 (2003) (quoting *King v. King*, 40 Va. App. 200, 212-13, 578 S.E.2d 806, 813 (2003), in turn quoting *Haynes v. Glenn*, 197 Va. 746, 750, 91 S.E.2d 433, 436 (1956)). Consequently, an owner of personal property "whether he is generally familiar with such values or not, ought certainly to be allowed to estimate its worth; the weight of his testimony (which often would be trifling) may be left to the jury, and courts have usually made no objections to this policy." *Haynes*, 197 Va. at 750-51, 91 S.E.2d at 436 (quoting 3 Wigmore on Evidence § 716, at 48). Nothing in this opinion should be read as disturbing those settled precedents. This case, however, involves a leap of a different magnitude, into the thought processes of another.

than speculation, it is not admissible."); *Barbie v. Minko Constr., Inc.*, 766 N.W.2d 458, 462 (N.D. 2009) (excluding lay opinion testimony because "a full review of their . . . testimony indicates there is no sustainable basis for their opinions and they were merely guessing or speculating"); *State v. Davis*, 261 P.3d 1197, 1210 (Or. 2011) ("[O]pinions based on speculation or conjecture generally are not based on the perception of the witness or on the witness's personal knowledge."). *See also MCI Telecomms. Corp. v. Wanzer*, 897 F.2d 703, 706 (4th Cir. 1990) ("The modern trend favors the admission of opinion testimony [under Rule 701], provided that it is well founded on personal knowledge as distinguished from hypothetical facts," and the opinion is offered "on the basis of relevant historical or narrative facts that the witness has perceived.") (alteration omitted).

The rule expressly permits a lay witness to offer an opinion about the sanity or mental capacity of another. Va. R. Evid. 2:701. Such opinions are properly admitted when they are based on the witness's personal experience or observations, for instance when the witness has observed erratic behavior, heard incoherent statements, and the like. Lay opinions about a *condition* like sanity or mental capacity are one thing; an opinion from a witness concerning whether another person would or would not have *made a specific decision* is a different matter altogether.

Martin and Meeks spoke with Starr extensively over the years and talked with her immediately before the surgery. They knew of Starr's aversion to surgery based on her difficult experience with prior surgeries. In the past, Starr had overcome her reluctance to undergo surgery and had proceeded anyway. As to the specific decision to undergo the surgery in question, neither Martin nor Meeks was present when Dr. Lahti consulted with Starr and neither knows what he may or may not have told her about the risks of, and alternatives to, the surgery.

Moreover, Starr did not convey to either Meeks or Martin what Dr. Lahti said to her about alternatives to surgery or what he may have omitted. In addition, according to the plaintiff's evidence, Starr had great confidence in Dr. Lahti. Martin and Meeks assumed that Starr would have mentioned alternatives to surgery had Dr. Lahti communicated them, and because of this silence, they reasoned, Dr. Lahti must not have informed Starr of these alternatives. In essence, Martin and Starr seek to extrapolate a decision their mother and sister would have made, despite the complete absence of evidence from Starr and from the doctor about the discussion that actually transpired between them and, specifically, whether surgical alternatives were or were not mentioned. Their lay opinion about what Starr's decision would have been was not rooted in their "personal experience or observations" as required by Rule of Evidence 2:701. On these facts, Martin and Meeks's testimony is nothing but speculation about what Starr's thought process might have been if various items of information had been provided to her with respect to this specific surgery.

Finally, we note that the standard on appeal is one of abuse of discretion. "In contrast to the de novo standard of review, the abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." *Lawlor v. Commonwealth*, 285 Va. 187, 212, 738 S.E.2d 847, 861 (2013) (internal quotation marks and citation omitted). "[W]hen a decision is discretionary . . . . the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352, 717 S.E.2d 134, 137 (2011) (quoting *Kern v. TXO Prod. Corp.*, 738 F.2d 968, 970 (8th Cir. 1984)). The trial court in the present case did not abuse its discretion in excluding this evidence.

10

Without this evidence, the plaintiff could not establish causation on her informed consent claim.

Therefore, the trial court properly dismissed the complaint.

    II.       THE COURT PROPERLY EXCLUDED AS IRRELEVANT A STATEMENT THE PATIENT MADE FOLLOWING THE SURGERY.

According to Martin, after the surgery, Starr said "I thought that this would be an easy operation." Dr. Lahti objected on relevance grounds. The court agreed and excluded this statement as irrelevant. Martin argues that this statement was admissible under the "Deadman's Statute," Code § 8.01-397. According to Martin, this statement was relevant to show that her mother "was misled into believing her operation was easy, when according to the plaintiff's evidence, the operation was extraordinarily dangerous." She also argues the statement was relevant to show that Starr must not have been properly informed about a safer non-surgical alternative, and that had she been so informed, she would not have gone forward with a dangerous operation. The assignment of error, however, does not address relevance – the basis upon which the trial court excluded the statement.[5] Instead, plaintiff's assignment of error is that the trial court "erred in ruling that Plaintiff's proffered evidence was inadmissible hearsay and speculation."[6] "An assignment of error that does not address the findings or rulings in the trial court . . . is not sufficient." Rule 5:17(c)(1)(iii). The trial court ruled that this statement was not

---

[5] In its letter opinion of July 5, 2016, the trial court wrote that the plaintiff was "attempting to use evidence which is undeniably hearsay and which is, at its heart, speculative." At the hearing that followed the plaintiff's motion to reconsider, held on December 16, 2016, at which the plaintiff offered the specific statement into evidence, the court excluded it on relevance grounds.

[6] The complete assignment of error reads:

> The trial court erred in ruling that Plaintiff's proffered evidence
> was inadmissible hearsay and speculation when Virginia's
> Deadman's Statute, Section 8.01-397, and other exceptions to the
> rules prohibiting hearsay testimony, permit such testimony.

11

relevant.  Failure to assign error to the trial court's ruling means that the issue is waived.  *Covel v. Town of Vienna*, 280 Va. 151, 163, 694 S.E.2d 609, 616 (2010).

## CONCLUSION

We will affirm the judgment below.

*Affirmed*.