COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff,[*] Ortiz and Raphael
Argued at Norfolk, Virginia


BICA AGGUINI

MEMORANDUM OPINION[**] BY
v.        Record No. 1431-23-1              JUDGE DANIEL E. ORTIZ
MARCH 11, 2025

MELISSA FRALEY AGGUINI


FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

John F. Haugh (Michael A. Hyman; Michael A. Hyman, P.L.C., on
briefs), for appellant.

Heather Larson Pedersen (Kyle J. Burcham; Pedersen Law, PLLC,
on brief), for appellee.


Virginia law calls for a flexible, commonsense approach to equitable distribution and

spousal support.  Circuit courts "need not start off at the 50-yard line and then look to the

discretionary factors of Code § 20-107.3(E) to move the ball marker up or down the sidelines,"

nor must they use rigid mathematical formulas requiring inputs of financial data.  *Robbins v.*

*Robbins*, 48 Va. App. 466, 480 (2006); *see also Watts v. Watts*, 40 Va. App. 685, 702 (2003).

That said, Bica Agguini contends that the circuit court misvalued hybrid real property owned by

Melissa Agguini and improperly denied him a 50% interest in it.  He also argues that the court

erred in awarding him limited spousal support for a defined duration.  Finding no abuse of

---

[*] Judge Huff participated in the hearing and decision of this case prior to the effective date
of his retirement on December 31, 2024.

[**] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

discretion in the court's valuation and distribution of property and award of spousal support, we affirm.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)). Bica Agguini (husband) and Melissa Fraley Agguini (wife)[1] were married on September 22, 2005. Wife filed for divorce on August 26, 2020. The equitable distribution and support matters were bifurcated for a separate trial.

I. Wife's New Jersey Condominium

On July 5, 1999, while the parties were dating each other, wife bought a condominium in New Jersey for $198,000 and they moved in together. According to husband, he was heavily involved in bidding on and negotiating the contract for the condo. Even so, only wife's name was on the deed, and she alone paid the mortgage and expenses. In 2002, wife refinanced the mortgage for $150,700. The same year, she hired two contractors to renovate the home. Wife signed the construction contract and paid for the contractors and materials. Husband assisted the contractors with the labor. While they lived there, husband was also involved in the condo association, which met around twice a year, until he had a falling out with the president. The parties lived there until 2004 when they moved to Nashville, Tennessee.

After moving, the condo was rented out. Both parties were registered as policyholders for the homeowner's insurance. Per husband, every lease agreement listed both parties as the landlord, but tenants only contacted him when there were issues. He testified that he was the

---

[1] We recognize that "former husband" and "former wife" are more accurate designations. Nevertheless, we use these less cumbersome titles for ease of reference.

only one who traveled to New Jersey to meet with prospective tenants. On the other hand, wife claimed she was the only one who "executed the [leases] as a landlord" and husband was merely "listed as someone to be notified." She also stated she was copied on all tenant correspondence. Further, wife solely maintained the property's financial records, deposited all rental income into her separate checking account, and independently managed the account for tenant security deposits.[2] She kept detailed records of the property's cashflow each year. What's more, she testified that the property was financially self-sustaining—the rental income covered the mortgage payments, condo dues, taxes, and special assessments; she never used marital funds for the property. The mortgage was ultimately paid off in 2015.

At trial, husband testified that he believed the property's fair market value was around $1.2 million. Wife testified that it was "probably a little bit north" of the $750,000 tax assessment. Wife argued that the New Jersey property was her separate property excluded from equitable distribution. Husband, using the *Brandenburg*[3] formula, asserted that the marital contribution for the New Jersey property would be $150,700 (77% of $195,619.37) and wife's separate share would be no more than $44,919.37. He thus argued the court should award him $600,000 for his share of the interest in the property, representing half of the $1.2 million value he testified to.

---

[2] Wife testified that the parties never had joint checking accounts. She was the sole wage earner throughout the relationship, even when she was unemployed for extended periods, and she handled all the family investments and finances. She was also the son's primary caretaker at night and on the weekends, and she handled the household laundry and cleaning. Husband was largely unemployed for the entire marriage, instead caring for the son during the day, cooking dinner, and maintaining the exterior of the home.

[3] *Brandenburg v. Brandenburg*, 617 S.W.2d 871 (Ky. Ct. App. 1981).

## II. Husband's Request for Spousal Support

At the time of trial, husband anticipated receiving $1,063 per month from Social Security income. According to his income and expense worksheet, he carried a negative net monthly balance of $3,279. Conversely, wife earned an average gross monthly pay of $7,453.86, plus $1,333.35 in "other [monthly] income," for a total of $8,787.21 per month. She explained that the "other income" represented "interest from the checking and savings account for a very minor amount" and "the net income from the [New Jersey] property." Her income and expense worksheet indicated that she carried a negative net monthly balance of $150.15.

Husband sought $3,700 per month in indefinite spousal support. Wife asked the court to deny husband's request, or in the alternative, to confine any support award to 2 years and 9 months, representing half of the 13-year marriage with credit for the 3 years and 9 months of post-separation support she provided.

## III. The Court's Ruling

The court orally ruled on April 12, 2023, and issued a twenty-nine-page written opinion and final order on May 23, 2023. In pertinent part, the court held that "[t]o the extent Husband contributed any effort [to the New Jersey property] prior to the marriage . . . those efforts were a gift." The court further found that "Husband presented no evidence on how his efforts improved the value of the New Jersey [p]roperty or to quantify such value added"; "there is just a lot of guesswork . . . that has been invited." Consequently, the court found that husband failed to provide sufficient evidence to use the *Brandenburg* formula. Instead, the court "lean[ed] on the *Moran* and *Keeling*[4] analysis" to classify the property as hybrid and find that the marital share constituted the "[$150,700] reduction of the mortgage principal" during the marriage. Therefore,

---

[4] *Moran v. Moran*, 29 Va. App. 408 (1999); *Keeling v. Keeling*, 47 Va. App. 484 (2006).

- 4 -

considering the factors in Code § 20-107.3, the court awarded husband $40,000 for his interest in the property. The rest was wife's sole and separate property.

For support, the court found that wife's gross monthly income was $8,787 and husband's was $1,063. After analyzing the factors in Code § 20-107.1(E), the court ordered wife to pay husband $500 per month in spousal support for two years. The court stated that "[t]he duration of the [c]ourt's award is brief by design, to encourage Husband to become self-supporting" and that husband failed to mitigate the amount of support he needed. Husband appeals.

ANALYSIS

I. Standards of Review

"[A]ll trial court rulings come to an appellate court with a presumption of correctness." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (alteration in original) (quoting *Wynnycky v. Kozel*, 71 Va. App. 177, 192 (2019)). "In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." *Stark v. Dinarany*, 73 Va. App. 733, 749-50 (2021) (quoting *Wright v. Wright*, 61 Va. App. 432, 449-50 (2013)). We will not overturn a circuit court's equitable distribution award absent "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020) (quoting *Anthony v. Skolnick-Lozano*, 63 Va. App. 76, 83 (2014)).

"An abuse of discretion occurs only when reasonable jurists could not differ as to the proper decision." *Wynnycky*, 71 Va. App. at 193 (quoting *Reston Hosp. Ctr., LLC v. Remley*, 63 Va. App. 755, 764 (2014)). If the circuit court considers all the factors enumerated in Code § 20-107.3 and bases its findings on credible evidence, we will not disturb its judgment. *Stark*, 73 Va. App. at 750. This deferential standard "rests on the venerable belief that the judge closest

to the contest is the judge best able to discern where the equities lie." *Wynnycky*, 71 Va. App. at 193 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)).

A circuit court has broad discretion in fashioning spousal support and its determination "will not be disturbed except for a clear abuse of discretion." *Wyatt v. Wyatt*, 70 Va. App. 716, 719 (2019) (quoting *Giraldi v. Giraldi*, 64 Va. App. 676, 682 (2015)). "In determining the appropriate amount of spousal support, the trial court must consider the needs of the requesting party and the other spouse's ability to pay." *Id.* (quoting *Alphin v. Alphin*, 15 Va. App. 395, 401 (1992)).

## II. Equitable Distribution of the New Jersey Property

For equitable distribution, Code § 20-107.3 requires every court to (1) "classify the property" as separate, marital, or hybrid, (2) "assign a value to the property," and (3) "distribute[] the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E)." *Sobol*, 74 Va. App. at 273 (quoting *Fox v. Fox*, 61 Va. App. 185, 193 (2012)). Husband does not challenge the circuit court's classification of the New Jersey property as hybrid. He contests only the court's valuation and distribution of the marital share.

### A. *The circuit court adequately valued the New Jersey property.*

Absent a motion for an alternative valuation date, courts must value property "as of the date of the evidentiary hearing on the evaluation issue." Code § 20-107.3(A). "A trial court has broad discretion to determine the value of assets," so long as the valuation is not based on "mere guesswork." *Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 556 (2004); *Bosserman v. Bosserman*, 9 Va. App. 1, 5 (1989). "[T]he particular method of valuing and the precise application of that method to the singular facts of the case must vary with the myriad situations that exist among married couples." *Howell v. Howell*, 31 Va. App. 332, 339 (2000). Thus, because valuation is heavily fact-dependent, "we give great weight to the findings of the trial

court." *Id.* Still, "[t]he burden is on the parties to provide the trial court sufficient evidence from which it can value their property." *Bosserman*, 9 Va. App. at 5. "[A]ppellate courts 'cannot continue to reverse and remand' equitable distribution cases 'where the parties have had an adequate opportunity to introduce evidence but have failed to do so.'" *Hamad*, 61 Va. App. at 609 (quoting *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987)).

To husband, there was sufficient evidence for the court to value the New Jersey property under the *Brandenburg* formula. Wife argues that husband "fail[ed] to provide any reliable documentation or expert testimony on the value of the New Jersey [p]roperty and the value added to the property by his efforts."

Although a court "may not arbitrarily refuse to classify or evaluate marital or separate property where sufficient evidence to do so is in the record," it is the court's duty in the first instance to determine whether the record contains "credible evidence of value." *Bowers*, 4 Va. App. at 618. Wife testified she bought the property in 1999 for $198,000. She then refinanced the mortgage in 2002 to $150,700. Using solely the monthly rental income, that mortgage was fully satisfied in 2015. No other evidence of value from 2015 to 2022 was offered.

Instead, the parties testified as to their beliefs of the property's fair market value. "It is generally recognized that the opinion testimony of the owner of property, because of his relationship as owner, is competent and admissible on the question of the value of such property, regardless of his knowledge of property values." *Haynes v. Glenn*, 197 Va. 746, 750 (1956). As the owner, wife was thus entitled to give her opinion of the value of the New Jersey property,

which she believed was "probably a little bit north" of the $750,000 tax assessment. Husband also testified that he believed the property's fair market value was around $1.2 million.[5]

But while an owner is entitled to value their own property, "a trial court is not obligated to accept [t]his testimony." *Worley v. Worley*, No. 2689-08-3, slip op. at 3, 2009 Va. App. LEXIS 300, at *4 (July 7, 2009); *see also Haynes*, 197 Va. at 750-51; *Walls v. Commonwealth*, 248 Va. 480, 482 (1994). Indeed, "[i]t is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has discretion to accept or reject any of the witness' testimony." *Layman v. Layman*, 62 Va. App. 134, 137 (2013) (quoting *Street v. Street*, 25 Va. App. 380, 387 (1997) (en banc)). Here, the court rejected both parties' valuations because they invited significant speculation and guesswork. Accordingly, the court found that the lone credible evidence of the value of the marital share was the "[$150,700] reduction of the mortgage principal" during the marriage.[6] Given the court's broad discretion in evaluating the evidence, and because the court applied the proper statutory framework, we find no error.

B. *The circuit court did not err in denying husband a greater interest in the property.*

We must then decide whether the court abused its discretion in apportioning the marital and nonmarital components of the property. "The purpose of Code § 20-107.3 is to divide fairly the value of the marital assets acquired by the parties during marriage with due regard for both their monetary and nonmonetary contributions to the acquisition and maintenance of the property and to the marriage." *O'Loughlin v. O'Loughlin*, 20 Va. App. 522, 524 (1995).

---

[5] Although it was stated without objection, husband's opinion concerning the property's fair market value was arguably inadmissible because he is not an owner of the property. But because neither party challenged on appeal the court's characterization of the property as hybrid, and it does not alter our conclusion, we need not address this further.

[6] It does not appear from the record that the court valued wife's separate share of the property, but husband did not assign any error to this finding, or lack thereof.

Virginia courts "have not adopted an exclusive method for determining how to apportion the increase in value [of a hybrid asset as between marital and] retraced separate property." *Keeling v. Keeling*, 47 Va. App. 484, 490 (2006) (alteration in original) (quoting *Martin v. Martin*, 27 Va. App. 745, 753 (1998) (en banc)). But no matter the method applied, the parties bear the general burden of providing sufficient evidence to the trial court from which it can value the property. *Bosserman*, 9 Va. App. at 5.

This Court approved the *Brandenburg* formula "as one method for ascertaining the value of the separate and marital components of hybrid property in relation to the original contributions," but emphasized that "other methods may be equally acceptable." *Keeling*, 47 Va. App. at 490 (quoting *Martin*, 27 Va. App. at 753); *Hart v. Hart*, 27 Va. App. 46 (1998). The *Brandenburg* formula requires evidence of the following:

> [1] [The] [n]onmarital contribution . . . defined as the equity in the property at the time of marriage, plus any amount expended after marriage by either spouse from traceable nonmarital funds in the reduction of mortgage principal, and/or the value of improvements made to the property from such nonmarital funds.

> [2] [The] [m]arital contribution . . . defined as the amount expended after marriage from other than nonmarital funds in the reduction of mortgage principal, plus the value of all improvements made to the property after marriage from other than nonmarital funds.

> [3] [The] [t]otal contribution . . . defined as the sum of nonmarital and marital contributions.

> [4] [The] [e]quity . . . defined as the equity in the property at the time of distribution.

*Brandenburg v. Brandenburg*, 617 S.W.2d 871, 872 (Ky. Ct. App. 1981).

Here, the parties presented evidence of the property's value when it was bought and when it was refinanced. No evidence was provided regarding the source of funds used for any downpayment. Using the rental income, the mortgage principal was reduced by $150,700 from

- 9 -

2002 to 2015; the parties were married for 10 of those years. This, along with the parties' testimonies, was the only evidence of the property's equity as of the trial date. No other evidence was presented showing the value of improvements to the property from marital or nonmarital funds during the marriage. Overall, there was scant evidence in the record that would have allowed the court to accurately apply the *Brandenburg* formula. The court therefore did not abuse its discretion by applying another method of apportionment.

We also find no error in awarding husband $40,000 for his interest in the marital share of the mortgage principal reduction. There is no presumption of equal distribution of marital assets in Virginia, and the judge closest to the contest is the judge best able to discern where the equities lie. *Watts*, 40 Va. App. at 702; *Wynnycky*, 71 Va. App. at 193. "The function of the [trial court] is to arrive at a fair and equitable monetary award based upon the equities and the rights and interests of each party in the marital property." *Mir v. Mir*, 39 Va. App. 119, 126 (2002) (alteration in original) (quoting *Gottlieb v. Gottlieb*, 19 Va. App. 77, 95 (1994)). The court properly considered the factors in Code § 20-107.3 and based its findings on credible evidence. The record supports the award, and we will not disturb the court's decision on appeal.

### III. The Spousal Support Award

Husband next argues that $500 per month in spousal support for two years was "wholly insufficient" as rehabilitative support. This includes a claim that the court failed to compute "all of [wife's] income sources," specifically the New Jersey property's rental income. He also argues that the marriage length, his health, and his career "concessions" to stay home and care for their son, compared to wife's "strong and well-established earning capacity, as evidenced not only by her current employment but by her earning history throughout the marriage," show why the spousal support award was insufficient. Husband's argument is unpersuasive.

- 10 -

Code § 20-107.1(E) creates complex balancing acts for trial courts. "In awarding spousal support, the [trial court] must consider the relative needs and abilities of the parties," "guided by the [thirteen economic and noneconomic] factors that are set forth in Code § 20-107.1." *Joynes v. Payne*, 36 Va. App. 401, 419 (2001) (quoting *Collier v. Collier*, 2 Va. App. 125, 129 (1986)); *see Payne v. Payne*, 77 Va. App. 570, 594 (2023). The court need not "quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." *Pilati v. Pilati*, 59 Va. App. 176, 183 (2011) (quoting *Duva v. Duva*, 55 Va. App. 286, 300 (2009)). And unlike child support calculations, Code § 20-107.1(E)(1) "does not . . . create a mathematical formula primarily reliant on the input of financial data." *Robbins*, 48 Va. App. at 484 n.10. Instead, the court must merely "consider" each spouse's estimated financial need and ability to pay as proven by the spouse seeking spousal support. *Id.*; *Pilati*, 59 Va. App. at 183. In a detailed written opinion, the court here adequately considered all the statutory factors in Code § 20-107.1(E) with factual findings for each factor. We see no reason to disturb these findings on appeal.

Husband also challenges the court's finding that wife's total monthly income was only $8,787 because "it is hard to fathom" that the New Jersey property expenses net her only $1,333.35 per month. Husband cites no authority supporting his argument. What's more, his written closing failed to consider the rental income when it argued that "Wife's monthly income is $7,453 per month." Husband also fails to acknowledge that his exhibit introduced during wife's testimony showed the property's cashflow from 2015 to 2022. Additionally, wife testified that she earned an average gross monthly pay of $7,453.86, plus $1,333.35 in "other [monthly] income," for a total of $8,787.21 per month. She explained that the "other income" represents both "interest from the checking and savings account for a very minor amount" and "the net

income from the [New Jersey] property." Husband's argument that the court failed to accurately calculate wife's income is meritless.

Beyond that, the court's findings surrounding the parties' need and ability to pay are supported by the record. Wife's income and expense worksheet indicated that her net monthly balance was negative $150.15. Conversely, husband testified he anticipated receiving $1,063 per month from Social Security income, leaving a negative net monthly balance of $3,279. Even so, the court found that husband failed to mitigate his need for support by inexplicably delaying his Social Security benefits application for two years.

In all, the court properly considered the statutory factors in Code § 20-107.1(E) and assessed each spouse's respective financial position. Accordingly, we find no abuse of discretion in awarding husband $500 per month in rehabilitative spousal support for a defined duration.

CONCLUSION

Viewing the credible evidence in the record, the circuit court did not abuse its discretion by valuing the New Jersey property using the principal mortgage reduction during the marriage. Nor was it error to use an apportionment method different from the *Brandenburg* formula. Similarly, we find no error in the court's spousal support award.[7]

*Affirmed.*

---

[7] There is a pending motion to dismiss asserting a late and defective appeal bond. Although not filed with the notice of appeal, husband paid the $500 appeal bond and filing fee with the trial court on June 22, 2023. He also filed an appeal bond with the trial court on August 23, 2023. Filing the appeal bond is not jurisdictional and this Court may extend the time to file. Code § 8.01-676.1(P); *Foster v. Foster*, 237 Va. 484, 486 (1989). In addition, the form of the bond is outdated but conforms to the language of an old form that was replaced by amendments effective May 1, 2017. We therefore deny the motion to dismiss.